**No. 25-5055**

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

CATHY A. HARRIS,

Plaintiff-Appellee,

v.

SCOTT BESSENT, in his official capacity as Secretary of the Treasury, et al.,

Defendants-Appellants.

On Appeal from the United States District Court
for the District of Columbia

**REPLY IN SUPPORT OF EMERGENCY MOTION FOR A STAY PENDING APPEAL**

YAAKOV M. ROTH
  *Acting Assistant Attorney General*

ERIC D. McARTHUR
  *Deputy Assistant Attorney General*

MARK R. FREEMAN
MICHAEL S. RAAB
JOSHUA M. SALZMAN
DANIEL AGUILAR
LAURA E. MYRON
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7228*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 305-1754*

## TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................ 1

ARGUMENT ........................................................................................................ 2

I.  The Government Is Likely To Prevail On The Merits .......................... 2

    A.  The President may remove MSPB Members without restriction ................................................................................... 2

    B.  Harris's counterarguments lack merit ........................................ 6

    C.  The district court lacked authority to issue its reinstatement order ................................................................... 8

II.  The Remaining Factors Support A Stay ............................................... 11

CONCLUSION ................................................................................................... 12

CERTIFICATE OF COMPLIANCE

## INTRODUCTION

Harris's contention that the President lacks inherent constitutional authority to remove principal officers from the Merit Systems Protection Board depends on a misreading of *Humphrey's Executor v. United States*, 295 U.S. 602 (1935), one that has been squarely repudiated by the Supreme Court. Her filing in this Court largely rehashes arguments rejected in *Seila Law LLC v. CFPB*, 591 U.S. 197 (2020), which definitively establishes that the President's power to remove executive officers is the default rule subject to limited exceptions not applicable here.

Harris also insists that the district court was empowered to restore her to office. But as this Court recently explained, requiring the President to "recognize and work with an agency head whom he has already removed," "impinges on the conclusive and preclusive power through which the President controls the Executive Branch that he is responsible for supervising." Opinion and Order at 6, *Dellinger v. Bessent*, No. 25-5052 (Mar. 10, 2025) (quotation marks omitted). Because the district court committed the same error recently corrected in *Dellinger*, a stay is equally warranted here.

# ARGUMENT

## I. The Government Is Likely To Prevail On The Merits

### A. The President may remove MSPB Members without restriction

The Supreme Court has repeatedly reaffirmed the "general rule" that "the President possesses 'the authority to remove those who assist him in carrying out his duties.'" *Seila Law LLC v. CFPB*, 591 U.S. 197, 215 (2020) (quoting *Free Enterprise Fund v. PCAOB*, 561 U.S. 477, 513-14 (2010)). The President "is elected by the entire Nation" and is constitutionally "responsible for the actions of the Executive Branch." *Seila Law*, 591 U.S. at 224. The Heads of Executive Departments—not directly accountable to the People—must therefore be directly accountable to the President. Accordingly, "the President's power to remove 'executive officers of the United States whom he has appointed' may not be regulated by Congress or reviewed by the courts." *Trump v. United States*, 603 U.S. 593, 621 (2024) (quoting *Myers v. United States*, 272 U.S. 52, 106, 176 (1926)).

Harris turns that analysis on its head. She begins from the premise that the limited *exceptions* to the President's removal power are the general rule, and goes on to assert that those exceptions obviously apply to the MSPB. In doing so, Harris conspicuously never quotes in full the only two exceptions to the removal power that the Supreme Court has recognized.

One is for "inferior officers with limited duties and no policymaking or administrative authority," *Seila Law*, 591 U.S. at 218, but since Harris is a principal officer (an MSPB Member appointed by the President and confirmed by the Senate), this exception does not apply to her.

Harris's argument, then, rests on the exception from *Humphrey's Executor v. United States*, 295 U.S. 602 (1935), which "permitted Congress to give for-cause removal protections to a multimember body of experts, balanced along partisan lines, that performed legislative and judicial functions and was said not to exercise any executive power." *Seila Law*, 591 U.S. at 216.

Congress, however, chose to endow MSPB with "significant executive power," *id.* at 220, and MSPB may accordingly direct federal agencies "to comply with any order or decision issued by the Board * * * and enforce compliance with any such order," *id.* § 1204(a)(2). It may invalidate rules already promulgated by the Office of Personnel Management, and may require all other executive agencies "to cease compliance" with the rules it has invalidated. 5 U.S.C. § 1204(a)(4), (f)(1)-(4). The fact that such sweeping power might be sparingly used, Opp. 12-13, does not lessen the executive nature of that power. And the MSPB regularly exercises "executive functions" by "conducting civil litigation in the courts of the

United States for vindicating public rights." *Buckley v. Valeo*, 424 U.S. 1, 140 (1976) (holding that such litigation must be conducted by executive officers under Article II); *see* 5 U.S.C. §§ 1204(i), 7703(a)(2).

The MSPB also performs a number of adjudicatory functions, but that alone does not place MSPB outside of the President's removal authority. "[S]ince the beginning of the Republic," Congress has assigned adjudicatory tasks to Executive Officers, but those adjudications "are exercises of—indeed, under our constitutional structure they *must be* exercises of—the 'executive Power.'" *City of Arlington v. FCC*, 569 U.S. 290, 304 n.4 (2013). In all events, there is no need for the Court here to address the status of executive tribunals that perform purely adjudicatory functions. *Cf. Wiener v. United States*, 357 U.S. 349 (1958). The MSPB possesses "substantial executive power," *Seila Law*, 591 U.S. at 218, because—in addition to its adjudicatory authority—it may countermand the rules and actions of other agencies and demand immediate compliance, and it may enforce its decisions through civil litigation in federal court. Harris presents no authority for the proposition that these powers are not executive.

Instead, Harris urges that Congress can determine, as a matter of policy, when to insulate "*some* executive power" from the President's control. Opp. 1. That is exactly the kind of misguided inquiry the Supreme

- 4 -

Court has warned against. The "separation of powers is a *structural safeguard* rather than a remedy to be applied only when specific harm * * * can be identified." *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 239 (1995). Those constitutional foundations are "a prophylactic device, establishing high walls and clear distinctions because low walls and vague distinctions will not be judicially defensible in the heat of interbranch conflict." *Id.*

"Under our Constitution, the 'executive Power'—all of it—is 'vested in a President,' who must 'take care that the Laws be faithfully executed.'" *Seila Law*, 591 U.S. at 203 (quoting U.S. Const. art. II, § 1, cl. 1; *id.* § 3). Harris's exercise of that power—unencumbered by the President's determination that she should be removed—"heightens the concern that" the Executive Branch "may slip from the Executive's control, and thus from that of the people." *Free Enterprise*, 561 U.S. at 499. That concern is only amplified by Harris's order—issued after her removal—unilaterally staying thousands of employment terminations made by the U.S. Department of Agriculture and refusing to consider the Department's opposition to that stay. Order on Stay Request at 2 n.3, 11-13 (MSPB Mar. 5, 2025) https://perma.cc/Z8NX-MWE3.

### B. Harris's counterarguments lack merit

Harris resists this analysis, calling it an "attack on centuries of precedent." Opp. 3. But *Humphrey's Executor* is not even a century old, and for much of that time the MSPB's functions were performed by the Civil Service Commission, Opp. 8-9, whose members the President could remove at will, 5 U.S.C. § 1102(d) (1976). The current constitutional concerns arose only when Congress chose—nearly two hundred years after the Founding—to create the MSPB, vest it with executive authority, and then insulate it from presidential control. That departure from "historical practice and * * * constitutional structure" are "compelling reasons not to extend" *Humphrey's Executor* beyond its bounds. *Seila Law*, 591 U.S. at 204.

Perhaps in response to such concerns, Harris contends that *Humphrey's Executor* applies to "'purely executive'" officers, and that the Court's characterization of the 1935 FTC as exercising "quasi-legislative and quasi-judicial" powers simply "'describe the circumstances'" of when Congress can restrict the President's removal power. Opp. 11 (quoting *Morrison v. Olson* 487 U.S. 654, 690-91 & n.30 (1988)). But *Seila Law* rejected those precise contentions. The Court reaffirmed that "the President has 'unrestrictable power * * * to remove purely executive officers.'" *Seila*

*Law*, 591 U.S. at 217 (quoting *Myers*, 295 U.S. at 632). And while the 1935 FTC likely exercised "'executive' [power], at least to some degree," *id.* at 216 n.2, the Court declined to "ignore the reasoning of *Humphrey's Executor* and instead apply the decision only as part of a reimagined *Humphrey's*-through-*Morrison* framework." *Id.* at 219 n.4. What mattered in *Humphrey's Executor* was the Court's conclusion that the FTC "occupies no place in the executive department and * * * exercises no part of the executive power vested by the Constitution in the President." 295 U.S. at 628. That reasoning does not apply to the MSPB.

Harris suggests that if the MSPB is unconstitutionally insulated from the President, the solution is not to allow the President to use his constitutional removal authority, but rather to invalidate the statutes granting the MSPB executive power. Opp. 13, 20. But the Supreme Court has explained it is better to sever a single removal restriction than attempt to restructure an agency's responsibilities from scratch. *See Seila Law*, 591 U.S. at 236-37 (invalidating removal restriction on CFPB Director and declining a remedy that would have divested the CFPB of its executive authority). The "editorial freedom" to re-work an agency's statutory authority generally "belongs to the Legislature, not the Judiciary." *Free Enterprise*, 561 U.S. at 510 (invalidating removal restriction).

Finally, Harris claims that granting a stay here would improperly call into doubt the removal restrictions for the Federal Reserve Board of Governors. Opp. 3. That is incorrect, as Supreme Court Justices and court of appeals Judges have observed. The Federal Reserve is "a unique institution with a unique historical background." *CFPB v. Community Financial Services Association of America*, 601 U.S. 416, 467 n.16 (2024) (Alito, J., dissenting); *accord Consumers' Research v. CPSC*, 98 F.4th 646, 657 (5th Cir. 2024) (Oldham, J., dissenting). The Federal Reserve's predecessors, the First and Second Banks of the United States, were not subject to plenary presidential control, and those historical pedigrees may illuminate the constitutional analysis. *Community Financial*, 601 U.S. at 432-34 (looking to legislative enactments at the Founding to inform constitutional principles).

### C.  The district court lacked authority to issue its reinstatement order

The President removed Harris from her office on February 10, 2025. Dkt. 40 at 4 (district court opinion). Almost a month later, the district court declared that Harris "shall continue to serve as a member" of the MSPB until her term expires unless removed for cause, and enjoined every federal defendant except the President from removing her from office, "treating her

- 8 -

as having been removed," or "otherwise recognizing any other person as" replacing Harris as an MSPB member. *Id.* at 34-35.

The real-world effect of that declaratory and injunctive relief is to countermand the President's removal of an executive principal officer and to reinstate her to office. But the well-settled rule is that "a court of equity has no jurisdiction over the appointment and removal of public officers." *In re Sawyer*, 124 U.S. 200, 212 (1888). Nor is mandamus appropriate, as that writ "will issue 'only where the duty to be performed is ministerial'" and the right "clear and indisputable." *13th Regional Corp. v. U.S. Department of Interior*, 654 F.2d 758, 760 (D.C. Cir. 1980). The President's determination of who should be entrusted with the authorities of a principal executive office is anything but ministerial, and Harris's entitlement to a restriction on the President's authority is neither clear nor indisputable.

Harris quibbles at the edges of the relevant arguments. She points to *Severino v. Biden*, 71 F.4th 1038 (D.C. Cir. 2023) and *Swan v. Clinton*, 100 F.3d 973 (D.C. Cir. 1996), cases that considered the hypothetical possibility of reinstatement to determine whether there was an Article III case or controversy—but which did not order reinstatement. And she relies upon *Vitarelli v. Seaton*, 359 U.S. 535 (1959), which held that the Department of Interior violated its own regulations in terminating "an Education and

Training Specialist in the Education Department of the Trust Territory of the Pacific Islands" in Palau, *id.* at 536.

None of those cases speak to the heart of the weighty concerns here. The relief Harris sought and the district court granted is a *de facto* "injunction restricting the President's exercise of his 'conclusive and preclusive constitutional authority' to remove officers." Order at 23, *Dellinger v. Bessent*, No. 25-5028 (Katsas, J., dissenting) (quoting *Trump*, 603 U.S. at 608-09). Given that the President's "exclusive power of removal in executive agencies" "disabl[es] the Congress from acting upon the subject," *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 637-38 & n.4 (1952) (Jackson, J., concurring), principles of equity could not properly supplant that constitutional structure and permit the Judicial Branch to reinstate an executive officer removed by the President.

That is precisely why the Supreme Court's precedents on contested presidential removals in *Humphrey's Executor* and *Wiener* have concerned "the traditional remedy" of backpay. Order and Op. at 6, *Dellinger v. Bessent*, No. 25-5052 (D.C. Cir. Mar. 10, 2025) (*Dellinger Stay Op.*). The constitutional analysis as to that remedy is far more placid than a direct separation-of-powers confrontation of a court using its equitable authority

to reverse the democratically elected President's exercise of core constitutional powers to remove a principal executive officer.

## II. The Remaining Factors Support A Stay

The remaining factors support a stay, and this Court examined materially identical considerations when it stayed a district court order reinstating the Special Counsel. *Dellinger Stay Op.* at 6-8. The Executive Branch will suffer irreparable injury absent a stay because "it is impossible to unwind the days during which a President is directed to recognize and work with a" principal officer "whom he has already removed." *Id.* at 6 (quotation marks and alterations omitted). The "relative importance" of the MSPB's functions "go[] to the extent—and not the character—of the President's injury." *Id.* By contrast, Harris "would likely be entitled to backpay if [she] were to prevail on appeal," *id.*, which would address her claim for "wages and benefits," Dkt. 1 at 15. At most, a stay would place Harris "out of office for a short period of time," and that effectuation of the President's removal "does not mean" that Harris's "injury is irreparable and weighs in [her] favor." *Dellinger Stay Op.* 7. And the public interest—at a minimum—"does not weigh in [Harris's] favor" when "it is not clear how" the Court can balance Harris's "asserted public interest against the public interest asserted by the rest of the executive branch." *Id.* Because "the first

three *Nken* factors weigh in favor of a stay" and no factors counsel against it, the government has "met its burden." *Id.* at 8.

## CONCLUSION

This Court should stay the district court's order pending appeal and should issue an immediate administrative stay.

Respectfully submitted,

YAAKOV M. ROTH
  *Acting Assistant Attorney General*

ERIC D. McARTHUR
  *Deputy Assistant Attorney General*

MARK R. FREEMAN
MICHAEL S. RAAB
JOSHUA M. SALZMAN
*/s/ Daniel Aguilar*
DANIEL AGUILAR
LAURA E. MYRON
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7228*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 514-4819*

# CERTIFICATE OF COMPLIANCE

This reply complies with the type-volume limit of Federal Rule of Appellate Procedure 27(d)(2)(C) because it contains 2,365 words. This reply also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in 14-point Book Georgia, a proportionally spaced typeface.

*/s/ Daniel Aguilar*
Daniel Aguilar