**Nos. 25-5037, 25-5055, 25-5057**

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

CATHY A. HARRIS, in her personal capacity and in her official capacity as Member of the Merit Systems Protection Board,

Plaintiff-Appellee,

v.

SCOTT BESSENT, in his official capacity as Secretary of the Treasury, et al.,

Defendants-Appellants.

GWYNNE A. WILCOX,

Plaintiff-Appellee,

v.

DONALD J. TRUMP, in his official capacity as President of the United States, et al.,

Defendants-Appellants.

On Appeals from the United States District Court
for the District of Columbia

### BRIEF FOR APPELLANTS

YAAKOV M. ROTH
  *Acting Assistant Attorney General*

ERIC D. McARTHUR
  *Deputy Assistant Attorney General*

MARK R. FREEMAN
MICHAEL S. RAAB
JOSHUA M. SALZMAN
LAURA E. MYRON
DANIEL AGUILAR
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7228*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 305-1754*

# CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

## A.    Parties and Amici

In *Harris v. Bessent*, Nos. 25-5037 and 25-5055, plaintiff is Cathy A. Harris, in her personal capacity and in her official capacity as Member of the Merit Systems Protection Board. Defendants are Scott Bessent, in his official capacity as Secretary of the Treasury; Trent Morse, in his official capacity as Deputy Assistant to the President and Deputy Director of the White House Presidential Personnel Office; Sergio Gor, in his official capacity as Director of the White House Presidential Personnel Office; Henry J. Kerner, in his official capacity as Acting Chairman of the Merit Systems Protection Board; Donald J. Trump, in his official capacity as President of the United States of America; and Russell T. Vought, in his official capacity as Director of the Office of Management and Budget.

In *Wilcox v. Trump*, No. 25-5057, plaintiff is Gwynne A. Wilcox. Defendants are Donald J. Trump, in his official capacity as President of the United States, and Marvin E. Kaplan, in his official capacity as Chairman of the National Labor Relations Board.

Amici appearing before the district court and this Court are the states of Alabama, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, Florida, Georgia, Hawaiʻi, Idaho, Illinois, Indiana, Iowa, Kansas,

Kentucky, Louisiana, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Jersey, New Mexico, New York, North Dakota, Oklahoma, Oregon, Rhode Island, South Carolina, Tennessee, Texas, Utah, Vermont, Washington, West Virginia, and Wisconsin.

Additional amici include Martin Akerman, the American Federation of Labor and Congress of Industrial Organizations (AFL-CIO), the Arizona Legislature, John C. Coates, Charles Cohen, the Constitutional Accountability Center, Ariana Cotes, the District of Columbia, Sarah Fox, Jeffrey N. Gordon, Kathryn Judge, Logan Karam, Wilma Liebman, Lauren McFerran, Lev Menand, Mark Gaston Pearce, Nancy Schiffer, Separation of Powers Clinic at the Catholic University of America's Columbus School of Law, and Jed H. Sugerman.

No intervenors participated before the district court or this Court.

## B.    Rulings Under Review

Appeal Nos. 25-5037 and 25-5055 arise from the district court suit *Harris v. Bessent*, No. 1:25-cv-412 (D.D.C.), before Judge Rudolph Contreras. The rulings under review in No. 25-5037 are the district court's grant of a temporary restraining order (Dkt. 8) and accompanying memorandum opinion (Dkt. 9), issued on February 18, 2025. The court's

opinion will be published in F. Supp. 3d, and is available at 2025 WL 521027. The rulings under review in No. 25-5055 are the district court's grant of summary judgment for declaratory and injunctive relief (Dkt. 39) and accompanying memorandum opinion (Dkt. 40), issued on March 4, 2025. The court's opinion will be published in F. Supp. 3d, and is available at 2025 WL 679303.

Appeal No. 25-5057 arises from the district court suit *Wilcox v. Trump*, No. 1:25-cv-334 (D.D.C.), before Judge Beryl A. Howell. The rulings under review are the district court's grant of summary judgment (Dkt. 34) and accompanying memorandum opinion (Dkt. 35), issued on March 6, 2025. The court's opinion will be published in F. Supp. 3d, and is available at 2025 WL 720914.

## C.    Related Cases

These appeals have not previously been before this Court.

*Grundmann v. Trump*, No. 1:25-cv-425 (D.D.C. filed Feb. 13, 2025), involves a challenge to the President's removal of a principal officer from a multimember agency (the Federal Labor Relations Authority) with statutory removal restrictions, 5 U.S.C. § 7104(b).

*Dellinger v. Bessent*, No. 25-5052 (D.C. Cir filed Mar. 3, 2025), involves a challenge to the President's removal of a principal officer serving

as the sole head of an agency (Office of Special Counsel) with statutory

removal restrictions, 5 U.S.C. § 1211(b).

/s/ *Daniel Aguilar*
Daniel Aguilar
   *Attorney, Appellate Staff*
   *Civil Division*
   *U.S. Department of Justice*
   *950 Pennsylvania Avenue NW*
   *Washington, DC 20530*
   *(202) 305-1754*

# TABLE OF CONTENTS

**Page**

GLOSSARY ............................................................................ xv

STATEMENT OF JURISDICTION ........................................... 1

INTRODUCTION ...................................................................... 2

STATEMENT OF THE ISSUES ................................................. 5

STATEMENT OF THE CASE ..................................................... 6

I.    Statutory Background ..................................................... 6

II.   The *Harris* Litigation ................................................. 11

III.  The *Wilcox* Litigation ................................................ 13

SUMMARY OF ARGUMENT .................................................... 15

STANDARD OF REVIEW ......................................................... 16

ARGUMENT ............................................................................. 15

I.    The President Has Constitutional Authority To Remove
Members Of The NLRB And MSPB At Will ..................... 16

    A.    The President's Presumptive Power of Removal and Its
Limited Exceptions .................................................. 16

    B.    NLRB Members Must Be Removable At Will ............ 27

    C.    MSPB Members Must Be Removable At Will ............ 33

II.   The District Courts Erred In Ordering The Reinstatement Of
Principal Officers The President Had Already Removed ....... 37

CONCLUSION .......................................................................... 51

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Cases:** **Page(s)**

*13th Regional Corp. v. U.S. Department of Interior,*
  654 F.2d 758 (D.C. Cir. 1980) ...................................... 47, 48

*American Bankers Association v. National Credit*
  *Union Administration*, 934 F.3d 649 (D.C. Cir. 2019) ........................ 16

*American Federation of Labor and Congress of Industrial*
  *Organizations v. NLRB,*
  57 F.4th 1023 (D.C. Cir. 2023) ...................................... 8, 30

*American Hospital Association v. NLRB,*
  499 U.S. 606 (1991) ...................................... 30

*Anatol Zukerman & Charles Krause Reporting, LLC v.*
  *U.S. Postal Service,*
  64 F.4th 1354 (D.C. Cir. 2023) .............................. 4-5, 16, 48

*Andrade v. Lauer,*
  729 F.2d 1475 (D.C. Cir. 1984) ............................................ 46

*Baker v. Carr,*
  369 U.S. 186 (1962) ................................................ 39, 41, 44

*Bessent v. Dellinger,*
  145 S. Ct. 515 (2025) .......................................... 40

*Bivens v. Six Unknown Named Agents of Federal*
  *Bureau of Narcotics,*
  403 U.S. 388 (1971) .............................................. 24

*Buchanan v. Barr,*
  71 F.4th 1003 (D.C. Cir. 2023) ............................................ 24

*Buckley v. Valeo,*
  424 U.S. 1 (1976) .............................................. 35

*Carlson v. Green,*
  446 U.S. 14 (1980) .............................................. 24

vi

*CFPB v. Seila Law LLC,*
   923 F.3d 680 (9th Cir. 2019) .................................................. 23

*City of Arlington v. FCC,*
   569 U.S. 290 (2013) ........................................................... 21

*Collins v. Yellen,*
   594 U.S. 220 (2021) ...................................... 26, 30, 31, 44, 50

*Consolidated Edison Co. v. Ashcroft,*
   286 F.3d 600 (D.C. Cir. 2002) ............................................. 47

*Consumers' Research v. Consumer Product Safety Commission,*
   98 F.4th 646 (5th Cir. 2024).................................................. 48

*Davis v. Passman,*
   442 U.S. 228 (1979) ........................................................... 24

*Delgado v. Chavez,*
   140 U.S. 586 (1891) ........................................................... 45

*Dellinger v. Bessent,*
   No. 25-5028, 2025 WL 559669 (D.C. Cir. Feb. 15, 2025) ............... 38, 41

*eBay Inc. v. MercExchange, LLC,*
   547 U.S. 388 (2006) ........................................................... 48

*Egbert v. Boule,*
   596 U.S. 482 (2022) ........................................................... 24

*Elgin v. Department of Treasury,*
   567 U.S. 1 (2012) .............................................................. 33

*Ex parte Hennen,*
   38 U.S. (13 Pet.) 230 (1839) ................................................ 45

*Exela Enterprise Solutions, Inc. v. NLRB,*
   32 F.4th 436 (5th Cir. 2022) ................................................ 17

*Federal Baseball Club of Baltimore v. National League
   of Professional Baseball Clubs,*
   259 U.S. 200 (1922) ........................................................... 24

*Fibreboard Paper Prods. Corp. v. NLRB,*
  379 U.S. 203 (1964) ................................................................ 7

*Flast v. Cohen,*
  392 U.S. 83 (1968) ................................................................ 23

*Free Enterprise Fund v. Public Company Accounting*
  *Oversight Board,*
  561 U.S. 477 (2010) ...................................................... 17, 32

*Great-West Life & Annuity Insurance Co. v. Knudson,*
  534 U.S. 204 (2002) ................................................................ 44

*Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond*
  *Fund, Inc.,*
  527 U.S. 308 (1999) ...................................................... 39, 44

*Harper v. Virginia Department of Taxation,*
  509 U.S. 86 (1993) ................................................................ 29

*Haviland v. Butz,*
  543 F.2d 169 (D.C. Cir. 1976) ................................................ 24

*Heckler v. Ringer,*
  466 U.S. 602 (1984) ...................................................... 46, 47

*Hein v. Freedom From Religion Foundation, Inc.,*
  551 U.S. 587 (2007) ...................................................... 23, 24

*Humphrey's Executor v. United States,*
  295 U.S. 602 (1935) ...................... 3, 15, 17, 18, 19, 20, 22, 27, 36, 39

*In re Cheney,*
  406 F.3d 723 (D.C. Cir. 2005) (en banc) .......................... 46, 47

*In re National Nurses United,*
  47 F.4th 746 (D.C. Cir. 2022) ................................................ 47

*In re Sawyer,*
  124 U.S. 200 (1888) ...................................................... 39, 41, 43

*International Union of Operating Engineers,*
  *Stationary Engineers, Local 39 v. NLRB,*
  127 F.4th 58 (9th Cir. 2025) .............................. 27

*K & R Contractors, LLC v. Keene,*
  86 F.4th 135 (4th Cir. 2023) ............................. 44

*Kalaris v. Donovan,*
  697 F.2d 376 (D.C. Cir. 1983) .......................... 36

*Kaufmann v. Kijakazi,*
  32 F.4th 843 (9th Cir. 2022) ............................ 36

*Kerr v. National Endowment for the Arts,*
  726 F.2d 730 (Fed. Cir. 1984) .......................... 33

*Lucia v. SEC,*
  585 U.S. 237 (2018) ...................................... 35

*Marbury v. Madison,*
  5 U.S. (1 Cranch) 137 (1803) ........................... 45

*McIntosh v. Department of Defense,*
  53 F.4th 630 (Fed. Cir. 2022) ........................... 11

*MediNatura, Inc. v. FDA,*
  998 F.3d 931 (D.C. Cir. 2021) .......................... 49

*Mississippi v. Johnson,*
  71 U.S. (4 Wall.) 475 (1867) ............................ 38

*Morrison v. Olson,*
  487 U.S. 654 (1988) ................................... 17, 21

*Myers v. United States,*
  272 U.S. 52 (1926) ................................. 19, 32, 39

*New Process Steel, L.P. v. NLRB,*
  560 U.S. 674 (2010) ..................................... 50

*NLRB v. Bell Aerospace Co.,*
  416 U.S. 267 (1974) ..................................... 29

*NLRB v. Gissel Packing Co.*,
   395 U.S. 575 (1969) ............................................................. 7

*PHH Corp. v. CFPB*,
   881 F.3d 75 (D.C. Cir. 2018) ....................................... 18, 37

*Rodriguez v. SSA*,
   118 F.4th 1302 (11th Cir. 2024) ........................................ 36

*Sampson v. Murray*,
   415 U.S. 61 (1974) ............................................................. 44

*Schindler Elevator Corp. v. Washington Metropolitan*
   *Area Transit Authority*,
   16 F.4th 294 (D.C. Cir. 2021) ........................................... 43

*Seila Law LLC v. CFPB*,
   591 U.S. 197 (2020) ................. 3, 4, 15, 16, 17, 18, 20, 21, 22, 25, 26, 27,
                                          28, 29, 30-31, 31, 32, 34, 36, 37, 44, 49

*Severino v. Biden*,
   71 F.4th 1038 (D.C. Cir. 2023) ............................... 23, 42, 43

*Swan v. Clinton*,
   100 F.3d 973 (D.C. Cir. 1996) ................................. 38, 42, 47

*Trump v. United States*,
   603 U.S. 593 (2024) ............................................... 17, 32, 38

*United States v. Perkins*,
   116 U.S. 483 (1886) ........................................................... 17

*Vitarelli v. Seaton*,
   359 U.S. 535 (1959) ........................................................... 44

*Walton v. House of Representatives*,
   265 U.S. 487 (1924) ........................................................... 41

*White v. Berry*,
   171 U.S. 366 (1898) ..................................................... 40, 41

*Whitehorse v. Illinois Central Railroad Co.*,
  349 U.S. 366 (1955) ................................................................ 47

*Wiener v. United States*,
  357 U.S. 349 (1958) ............................................... 20, 21, 39

*Youngstown Sheet & Tube Co. v. Sawyer*,
  343 U.S. 579 (1952) ..................................................... 20

**Constitution and Statutes:**

U.S. Const. art. II, § 1, cl. 1 ....................................................... 2

U.S. Const. art. II, § 2, cl. 2 ....................................................... 18

U.S. Const. art. II, § 3 ............................................... 2, 16, 50

Act of Jan. 16, 1883, ch. 27, 22 Stat. 403 ................................. 8

Civil Service Reform Act of 1978,
  Pub. L. No. 95-454, 92 Stat. 1111 ...................................... 8, 9

5 U.S.C. §§ 556-557 ................................................................. 29

        § 1201 ................................................................... 9, 18

        § 1202 ....................................................................... 12

        § 1202(d) ..................................................................... 9

        § 1204(a)(1) ...................................................... 10, 33

        § 1204(a)(2) .................................................... 4, 11, 33

        § 1204(a)(2), (e) (2) (A) ...................................... 34

        § 1204(a)(4) ............................................................. 11

        § 1204(e)(2)(A) ...................................................... 33

        § 1204(f) ............................................................ 4, 34

        § 1204(i) .......................................................... 11, 35

        §§ 1204(i), 7703(a)(2) ............................................ 4

        §§ 1215(a)(1), 1216(a) .......................................... 10

§ 1215(a)(3) .................................................................. 10

§ 1215(a)(3)(A) ............................................................ 33

§ 2302(b)(1) ................................................................ 10

§ 7521(a) ............................................................. 10, 35

§ 7701(a) ............................................................... 4, 10

§ 7701(b)(1) ................................................................ 10

§ 7701(c)(2)(B) ............................................................ 10

§ 7703(a)(2) ........................................................... 11, 35

28 U.S.C. § 1291 ............................................................... 1

28 U.S.C. §§ 1331, 1361 ....................................................... 1

28 U.S.C. §§ 1331, 1361, 1651, 2201, 2202 .................................... 1

29 U.S.C. § 151 *et seq.* ..................................................... 6

§ 153(a) ........................................................ 6, 14, 18, 27

§ 153(b) .................................................................... 49

§ 154(a) .................................................................... 28

§ 156 ..................................................................... 3, 8

§ 159 .................................................................... 8, 30

§ 159(e) ................................................................. 8, 30

§ 160 ....................................................................... 6

§ 160(a) ................................................................. 3, 6

§ 160(b)-(c) ............................................................... 27

§ 160(c) ................................................................. 6, 7

§§ 160(c), 161(1) ........................................................... 7

§ 160(e) ................................................................ 8, 28

§ 160(j) ............................................................. 7, 8, 28

D.C. Code §§ 16-3501 to 16-3503 ............................................. 46

**Rules and Regulations:**

Federal Rule of Civil Procedure 81(b) ...................................................... 46

5 C.F.R. § 1201.3(a) ................................................................ 10

29 C.F.R. § 102.35(a) .................................................. 7

29 C.F.R. § 102.46(a) .................................................. 7

29 C.F.R. § 102.48(b) ................................................... 7

20 Fed. Reg. 2175 (Apr. 6, 1955) ........................................... 28

54 Fed. Reg. 16336 (Apr. 21, 1989) ........................................ 30

76 Fed. Reg. 54006 (Aug. 30, 2011) ........................................ 30

85 Fed. Reg. 11184 (Feb. 26, 2020) ........................................ 30

**Court Orders:**

*Dellinger v. Bessent,*
No. 25-5052 (D.C. Cir. Mar. 10, 2025) (per curiam) .................... 5, 13, 50

**Administrative Decisions:**

*Amazon.com Services LLC,*
373 NLRB No. 136,
2024 WL 4774441 (NLRB Nov. 13, 2024) ............................................. 29

*Gilmore v. Department of Defense,*
2024 WL 165821 (MSPB Jan. 12, 2024) ................................................ 34

*McKenna v. Department of the Navy,*
105 M.S.P.R. 373, 383 (MSPB 2007) .................................................... 34

*Smith v. Department of Justice,*
28 M.S.P.R. 696, 699-700 (MSPB 1985) ................................................ 34

Order on Stay Request,
*Special Counsel ex rel. Doe v. Department of Agriculture*
(MSPB Mar. 5, 2025), https://perma.cc/8RH3-ZRWN ................. 13, 35

**Other:**

William Blackstone,
*Commentaries on the Laws of England*
(George W. Childs ed. 1868)................................................................ 45

NLRB
Casehandling Manual (Jan. 2025), https://perma.cc/7NWT-JG8Y ....... 6

NLRB,
*About NLRB: The Board*, https://perma.cc/SPM9-H7AA ................... 49

*Power of the President to Remove Members of the
Tennessee Valley Authority from Office*,
39 Op. Att'y Gen. 145, 146-47 (1938) ............................................... 19-20

Jon O. Shimabukuro & Jennifer A. Staman,
Congressional Research Service, R45630,
*Merit Systems Protection Board (MSPB): A Legal Overview*
(Mar. 25, 2019), https://perma.cc/YR2J-TACS ...................................... 9

Social Security Administration,
*Hearings and Appeals*, https://perma.cc/6W8M-C6TB ...................... 36

The White House,
*President Trump Designates Chairmen and Acting Chairmen*
(Jan. 20, 2025), https://perma.cc/Z4HC-R963 ................................... 14

## GLOSSARY

| | |
|---|---|
| CFPB | Consumer Financial Protection Bureau |
| FTC | Federal Trade Commission |
| JA | Joint Appendix |
| MSPB | Merit Systems Protection Board |
| NLRB | National Labor Relations Board |

## STATEMENT OF JURISDICTION

In *Harris v. Bessent*, plaintiff Cathy Harris invoked the district court's jurisdiction under 28 U.S.C. §§ 1331 and 1361. JA13, ¶ 5. On February 18, 2025, the district court entered a temporary restraining order, JA25-26, and the government noticed an appeal from that order on February 20, 2025, JA48, docketed in this Court as No. 25-5037. On March 4, 2025, the district court granted plaintiff's motion for summary judgment and entered a permanent injunction, JA70-71, and defendants noticed an appeal the same day, JA107, docketed in this Court as No. 25-5055. This Court has jurisdiction. 28 U.S.C. § 1291.[1]

In *Wilcox v. Trump*, plaintiff Gwynne Wilcox invoked the district court's jurisdiction under 28 U.S.C. §§ 1331, 1361, 1651, 2201, and 2202. JA119, ¶ 1. On March 6, 2025, the district court granted summary judgment to plaintiff and issued a permanent injunction, JA137-38, and defendants noticed an appeal that same day, docketed as No. 25-5057. JA175. This Court has jurisdiction. 28 U.S.C. § 1291.[2]

---

[1] The 25-5037 appeal of the temporary restraining order has been overtaken by the final judgment in *Harris*, and it can be dismissed as moot.

[2] Although *Harris* and *Wilcox* have not been formally consolidated, the Court has calendared the cases to be heard in tandem on May 16, 2025. Because the cases will be heard by a single panel and involve closely related legal analyses, the government is submitting a single brief in both cases to avoid needlessly duplicative briefing.

**INTRODUCTION**

These appeals arise from a pair of district court orders that reinstate principal officers of the United States whom the President has lawfully removed. In one suit, a district court countermanded the President's removal of Gwynne Wilcox from her position as a Member of the National Labor Relations Board (NLRB). In the other, a district court similarly overrode the President's removal of Cathy Harris from the Merit Systems Protection Board (MSPB). These unprecedented orders allowing agency heads to remain in office and wield executive power over the President's objection work a grave harm to the separation of powers and undermine the President's ability to exercise his core Article II authority under the Constitution.

The Constitution vests the entirety of the "executive Power" in the President, who is given the sole responsibility to "take Care that the Laws be faithfully executed." U.S. Const. art. II, § 1, cl. 1; *id.* § 3. As the Supreme Court has long held, that executive power encompasses the authority to remove those who aid the President in carrying out his duties. Yet, the district courts reinstated Harris and Wilcox to their respective positions, notwithstanding the President's determination that they should no longer

be entrusted with executive power. This state of affairs is constitutionally intolerable.

The district courts wrongly concluded that because the MSPB and NLRB are multimember agencies, statutory removal restrictions can saddle the President with principal officers who lack his trust. But the district courts' reliance on *Humphrey's Executor v. United States*, 295 U.S. 602 (1935), was misplaced. That case recognized a limited exception to the rule of at-will presidential removal for "a multimember body of experts, balanced along partisan lines, that performed legislative and judicial functions and was said *not to exercise any executive power*." *Seila Law LLC v. CFPB*, 591 U.S. 197, 216 (2020) (emphasis added).

This exception, however, does not encompass the NLRB, which plainly exercises substantial executive power in carrying out its mission to "prevent any person from engaging in any unfair labor practice * * * affecting commerce." 29 U.S.C. § 160(a). The NLRB adjudicates disputes over unfair labor practices, has the authority to order a host of affirmative remedies, and can seek to enforce compliance with those orders in federal court. It can conduct investigations and seek injunctive relief in federal court. And it has broad authority to promulgate regulations "as may be necessary" to carry out its statutory mandate. *Id*. § 156. Through these

executive powers, the NLRB sets national labor policy affecting millions of Americans.

Nor does the *Humphrey's Executor* exception apply to the MSPB, which reviews decisions of other Executive Branch agencies to remove and discipline federal employees. 5 U.S.C. § 7701(a). The MSPB issues final decisions, which may award affirmative remedies like reinstatement, backpay, and attorney's fees; it is empowered to unilaterally "enforce compliance with any such order," *id.* § 1204(a)(2); it can *sua sponte* invalidate certain federal regulations and can "require any agency * * * to cease compliance with" such an invalidated rule, *id.* § 1204(f); and it appears in federal court in its own name and through its own attorneys, *id.* §§ 1204(i), 7703(a)(2). Through these executive powers, the MSPB significantly affects the management of the Executive Branch.

In short, because both agencies wield "substantial executive power," they do not fall within the narrow *Humphrey's Executor* exception. *Seila Law*, 591 U.S. at 218.

Further, the district courts erred in ordering plaintiffs reinstated as principal executive officers. That "permanent injunction" is unavailable under longstanding precedent and is inappropriate because plaintiffs have "remedies available at law, such as monetary [relief]" in backpay. *Anatol*

*Zukerman & Charles Krause Reporting, LLC v. U.S. Postal Service*, 64 F.4th 1354, 1364 (D.C. Cir. 2023). Moreover, the balance of hardships and the public interest do not warrant an injunction. As this Court has recognized, reinstatement "impinges on the 'conclusive and preclusive' power through which the President controls the Executive Branch that he is responsible for supervising.'" Op. 6, *Dellinger v. Bessent*, No. 25-5052 (D.C. Cir. Mar. 10, 2025) (per curiam). At bottom, the public interest is best served by permitting the elected President to determine who ought to be entrusted with the Constitution's executive power.

## STATEMENT OF THE ISSUES

The issues presented are:

**1.** Whether the President has authority under Article II of the Constitution to remove a Member of the National Labor Relations Board without first having to bear the burden of establishing neglect of duty or malfeasance in office.

**2.** Whether the President has authority under Article II of the Constitution to remove a Member of the Merits Systems Protection Board without first having to bear the burden of establishing inefficiency, neglect of duty, or malfeasance in office.

**3.** Whether the district courts exceeded their remedial authority in ordering the reinstatement of principal officers the President determined should no longer be entrusted with executive power.

## STATEMENT OF THE CASE

### A.    Statutory Background

**1.** The NLRB is an Executive Branch agency that was created by the National Labor Relations Act, 29 U.S.C. § 151 *et seq*. The NLRB comprises five Members, appointed by the President with the advice and consent of the Senate, who serve staggered terms of up to five years. *Id.* § 153(a). The Act provides that NLRB Members may be removed only "for neglect of duty or malfeasance in office." *Id.*

Congress gave the NLRB broad powers to "prevent any person from engaging in any unfair labor practice * * * affecting commerce." 29 U.S.C. § 160(a). To achieve that mandate, the NLRB has final authority to adjudicate allegations that an employer or union has committed an unfair labor practice. *Id.* § 160. When such an allegation is made, the NLRB's General Counsel can issue a complaint and a notice of hearing before the Board or an administrative law judge. *See* NLRB Casehandling Manual, pt. 1, §§ 10268.1-10268.2 (Jan. 2025), https://perma.cc/7NWT-JG8Y.

If an administrative law judge conducts the initial hearing, the parties may ask the NLRB to review the matter. 29 U.S.C. § 160(c); *see generally*

29 C.F.R. § 102.35(a); *id.* § 102.46(a). The NLRB then considers the case—which may include taking additional evidence or subpoenaing witnesses—and then issues a final decision, either adopting the initial decision with or without modifications, or issuing its own final decision, as necessary. 29 U.S.C. §§ 160(c), 161(1); 29 C.F.R. § 102.48(b).

Where the NLRB concludes that an unfair labor practice has occurred, it "shall state its findings of fact and shall issue * * * an order requiring such person to cease and desist from such unfair labor practice, and to take such affirmative action including reinstatement of employees with or without backpay, as will effectuate the policies of" the National Labor Relations Act. 29 U.S.C. § 160(c). The NLRB's authority to issue remedies is "a broad discretionary one, subject to limited judicial review." *Fibreboard Paper Products Corp. v. NLRB*, 379 U.S. 203, 215-16 (1964). In addition to backpay and reinstatement, the NLRB may enter a wide range of nonmonetary relief, including remedial bargaining orders compelling employers to bargain with unions based on union authorization cards from a majority of employees rather than an election. *See NLRB v. Gissel Packing Co.,* 395 U.S. 575 (1969). After issuing a complaint, the NLRB can seek immediate injunctive relief in district court, 29 U.S.C. § 160(j), and can

also seek judicial enforcement of final NLRB orders in the courts of appeals, *id.* § 160(e).

The NLRB possesses other significant powers. It is authorized to promulgate "such rules and regulations as may be necessary" to carry out its statutory mandate. 29 U.S.C. § 156. It also supervises secret-ballot elections to determine whether a union will represent a group of employees, *American Federation of Labor and Congress of Industrial Organizations v. NLRB*, 57 F.4th 1023, 1028-29 (D.C. Cir. 2023) (citing 29 U.S.C. § 159), or whether an existing union's representation authority should be rescinded, 29 U.S.C. § 159(e).

**2.** Congress created the MSPB as part of the Civil Service Reform Act of 1978. Pub. L. No. 95-454, § 202(a), 92 Stat. 1111, 1121-31 (1978). The MSPB is a successor to the Civil Service Commission, an agency established in the Chester A. Arthur Administration to help the President prepare suitable civil service examination rules for applicants seeking federal employment. Act of Jan. 16, 1883, ch. 27, § 2, 22 Stat. 403, 403-04. The Commission was comprised of three Commissioners appointed by the President and removable at will. *See* 22 Stat. at 403 ("The President may remove any Commissioner.").

Nearly a century later, Congress passed the Civil Service Reform Act and split the Civil Service Commission's functions between two new agencies: the Office of Personnel Management and the MSPB. 92 Stat. at 1118-44. The Act charged the Office of Personnel Management with conducting the Commission's personnel management functions, while the MSPB performed the Commission's "hearing, adjudication, and appeals functions," and was vested with "authority to enforce agency compliance with its decisions." Jon O. Shimabukuro & Jennifer A. Staman, Congressional Research Service, R45630, *Merit Systems Protection Board (MSPB): A Legal Overview* 3 (Mar. 25, 2019), https://perma.cc/YR2J-TACS.

The MSPB, like the Civil Service Commission, consists of three Members appointed by the President with Senate confirmation. 5 U.S.C. § 1201. No more than two Members may belong to the same political party. *Id.* But in a departure from the longstanding operation of the Commission, Congress limited the President's ability to remove MSPB Members to only cases of "inefficiency, neglect of duty, or malfeasance in office." *Id.* § 1202(d).

The MSPB primarily reviews federal employee appeals of adverse actions "which [are] appealable to the Board under any law, rule, or

regulation," including those related to removal or suspension for periods greater than 14 days. 5 U.S.C. § 7701(a); *see also id.* § 7521(a); 5 C.F.R. § 1201.3(a). The MSPB interprets and applies portions of the Civil Rights Act of 1964, the Age Discrimination in Employment Act of 1967, the Fair Labor Standards Act of 1938, the Rehabilitation Act of 1973, *see* 5 U.S.C. § 2302(b)(1), and determines whether there has been a prohibited personnel practice as defined by Congress, *see* 5 U.S.C. § 7701(c)(2)(B) (MSPB may overturn agency action "based on any prohibited personnel practice described in section 2302(b)"). The MSPB may also impose disciplinary actions against federal employees who commit prohibited personnel practices, violate the Hatch Act, arbitrarily and capriciously withhold information under the Freedom of Information Act, or otherwise willfully refuse to comply with an MSPB order. *Id.* §§ 1215(a)(1), 1216(a). In such a disciplinary action, the MSPB can remove the person from federal employment and bar them from future federal employment for up to 5 years, and can assess a civil money penalty up to $1,000. *Id.* § 1215(a)(3).

The MSPB can hear cases directly or it can refer them for initial adjudication by inferior officers it appoints (administrative judges and administrative law judges). 5 U.S.C. § 7701(b)(1). The MSPB has authority to "take final action on any such matter[s]" before it, *id.* § 1204(a)(1), and

can order any federal agency or employee "to comply with any order or decision issued by the Board * * * and enforce compliance with any such order," *id.* § 1204(a)(2). And in addition to these functions, the MSPB may *sua sponte* review and invalidate rules promulgated by the Office of Personnel Management, and "shall require any agency * * * to cease compliance" with such invalidated rules. *Id.* § 1204(a)(4), (f).

The MSPB also has independent litigating authority. Except in the Supreme Court, "attorneys designated by the Chairman of the Board may appear for the Board, and represent the Board, in any civil action brought in connection with any function carried out by the Board." 5 U.S.C. § 1204(i). And when employees are aggrieved by an MSPB final order, the MSPB is sometimes the named respondent and litigates the case before the courts of appeals. *See id.* § 7703(a)(2), (b). And even in employment cases where the affected federal agency is represented by the Department of Justice, the MSPB may intervene to present its own arguments. *E.g.*, *McIntosh v. Department of Defense*, 53 F.4th 630, 635 (Fed. Cir. 2022).

### B. The *Harris* Litigation

Plaintiff Harris was first nominated by President Biden to serve as a Member of the MSPB in 2021. JA16, ¶ 24. Harris eventually began serving as a Member in 2022 and was confirmed as Chairman in 2024. JA16, ¶¶ 24-

25. On February 10, 2025, the Deputy Assistant to the President and the Deputy Director of the White House Presidential Personnel Office informed Harris that she was being removed from her position. JA24. The next day, Harris filed this lawsuit, *see generally* JA11-21, and moved for a temporary restraining order, requesting that she be reinstated.

The district court issued a temporary restraining order, JA25, ordering that "Harris shall continue to serve as Chairman of the MSPB" until "the Court rules on a preliminary injunction." JA47.[3] Following briefing and the parties' agreement that the preliminary-injunction motion should be consolidated with the merits, the court issued an order granting Harris's motion for summary judgment and entered a permanent injunction and declaratory judgment. JA70-71. The court concluded that "MSPB members' removal protections are constitutional under *Humphrey's Executor*," JA78, and that the court possessed the authority to issue injunctive and declaratory relief, JA90-98. Accordingly, the court declared that Harris shall continue to serve as a Member of the MSPB unless removed for the reasons listed in 5 U.S.C. § 1202, and enjoined defendants (other than the President) from "removing Harris from her

---

[3] Defendants appealed this decision. JA48. The district court's summary-judgment order rendered that appeal moot. *See* JA71 (vacating the temporary restraining order).

office without cause," treating her as having been removed, denying her access to the "benefits or resources of her office," replacing her, or recognizing any other person as holding her position on the MSPB. JA105-06.

Harris continues to wield substantial executive power, notwithstanding her removal from office. Recently, the Special Counsel—whose removal was later given effect by this Court—requested that the MSPB stay the termination of thousands of probationary employees who were recently terminated by the Department of Agriculture. Op. 5, *Dellinger v. Bessent*, No. 25-5052 (D.C. Cir. Mar. 10, 2025) (per curiam). Harris directed the Special Counsel to provide the names of the employees in question, and she then unilaterally granted the requested stay. Order on Stay Request, *Special Counsel ex rel. Doe v. Department of Agriculture* (MSPB Mar. 5, 2025), https://perma.cc/8RH3-ZRWN.

## C.    The *Wilcox* Litigation

Plaintiff Wilcox was confirmed as a Member of the NLRB in 2021, she was confirmed for a second term in 2023, and President Biden designated her the NLRB's Chair in December 2024. JA121, ¶ 12.

On January 20, 2025, the President designated Marvin Kaplan to replace Wilcox as the NLRB's Chair. The White House, *President Trump*

*Designates Chairmen and Acting Chairmen* (Jan. 20, 2025),
https://perma.cc/Z4HC-R963. On January 27, the Deputy Director of the
White House Presidential Personnel Office emailed Wilcox informing her
that the President was removing her as a Member of the NLRB. JA122, ¶14.

On February 5, Wilcox filed the underlying suit challenging her
removal, *see generally* JA118-28, and subsequently moved for summary
judgment. The district court granted that motion on March 6, 2025, and
entered a permanent injunction and declaratory judgment. JA137-38. The
court concluded that "[t]he NLRB fits well within the scope of *Humphrey's
Executor*," JA157, and "thus NLRB Board members' removal protections
are consistent with the text and historical understandings of Article II,"
JA166. Accordingly, the court declared Wilcox's termination "unlawful" and
"null and void," JA137, and ordered that she "shall continue to serve as a
member of the NLRB until her term expires * * * unless she is earlier
removed 'upon notice and hearing, for neglect of duty or malfeasance in
office,'" JA138 (quoting 29 U.S.C. § 153(a)). The court further enjoined
defendant Marvin Kaplan, and his subordinates and agents, from
"removing [Wilcox] from her office without cause," treating her as having
been removed, denying her access to the "benefits or resources of her
office," or obstructing her authority. JA138.

## SUMMARY OF ARGUMENT

**I.** The Constitution vests the President with the general authority to remove principal executive officers at will. *Seila Law LLC v. CFPB*, 591 U.S. 197, 213-14 (2020). The Supreme Court has recognized two narrow exceptions to the President's removal power—one exception for certain inferior officers (not at issue here), *id.* at 217, and another for multimember agencies that exercise "no part of the executive power" and "do not wield substantial executive power," *id.* at 215, 218. Because both the NLRB and MSPB wield substantial executive power, they do not fit within the narrow exception established by *Humphrey's Executor v. United States*, 295 U.S. 602 (1935), and their members must be removable at will.

**II.** Separately, the district courts erred by ordering that plaintiffs be fully reinstated as agency heads. The district courts' orders amount to *de jure* reinstatement beyond the equitable authority of the court. A court may not enjoin the President in performance of his official duties, including the appointment and removal of principal officers. Accordingly, when principal officers have challenged their removals from office, they have historically sought legal remedies like backpay, *quo warranto*, or mandamus. None of these legal remedies are available here, however; and the courts erred in concluding mandamus would likely be available in the alternative. Finally,

even if plaintiffs could demonstrate they prevail on the merits, equitable considerations weigh sufficiently in favor of the government such that the entry of a permanent injunction was an abuse of discretion.

## STANDARD OF REVIEW

This Court reviews the grant of summary judgment de novo. *American Bankers Association v. National Credit Union Administration*, 934 F.3d 649, 662 (D.C. Cir. 2019). "The decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court, reviewable on appeal for abuse of discretion." *Anatol Zukerman & Charles Krause Reporting, LLC v. U.S. Postal Service*, 64 F.4th 1354, 1361 (D.C. Cir. 2023).

## ARGUMENT

### I. The President Has Constitutional Authority To Remove Members Of The NLRB And MSPB At Will

#### A. The President's Presumptive Power Of Removal And Its Limited Exceptions

**1.** Article II of the Constitution provides that "the 'executive Power'—all of it—is 'vested in a President,' who must 'take Care that the Laws be faithfully executed.'" *Seila Law LLC v. CFPB*, 591 U.S. 197, 203 (2020) (quoting U.S. Const. art. II, § 1, cl. 1; *id.* § 3). The President and Vice-President are the only elected officials within the entire Executive Branch, and responsibility to the electorate requires that those wielding the

President's executive authority must remain accountable to the President. *Id.* at 224. Accordingly, the President "as a general matter" has "authority to remove those who assist him in carrying out his duties." *Free Enterprise Fund v. Public Company Accounting Oversight Board*, 561 U.S. 477, 513-14 (2010). "Without such power, the President could not be held fully accountable for discharging his own responsibilities; the buck would stop somewhere else." *Id.* at 514. It is thus well established that the President's removal power "is essential to the performance of his Article II responsibilities," *Exela Enterprise Solutions, Inc. v. NLRB*, 32 F.4th 436, 445 (5th Cir. 2022), and Congress cannot control the President's "conclusive and preclusive" removal authority "with respect to 'executive officers of the United States whom he has appointed,'" *Trump v. United States*, 603 U.S. 593, 608-09 (2024).

The Supreme Court has "recognized only two exceptions to the President's unrestricted removal power." *Seila Law*, 591 U.S. at 204. First, the Court has held that "Congress could provide tenure protections to certain *inferior* officers with narrowly defined duties." *Id.*[4] Second, *Humphrey's Executor v. United States*, 295 U.S. 602 (1935), held that

---

[4] *See, e.g.*, *United States v. Perkins*, 116 U.S. 483 (1886); *Morrison v. Olson*, 487 U.S. 654 (1988).

Congress could "give for-cause removal protections to a multimember body of experts, balanced along partisan lines, that performed legislative and judicial functions and was said not to exercise any executive power." *Seila Law*, 591 U.S. at 216. Those exceptions represent the "outermost constitutional limits of permissible congressional restrictions on the President's removal power" under current precedent. *Id.* at 218 (quoting *PHH Corp. v. CFPB*, 881 F.3d 75, 196 (D.C. Cir. 2018) (Kavanaugh, J., dissenting)).

There is no question that Harris and Wilcox served as principal officers rather than inferior officers: they were appointed by the President with Senate confirmation, *see* U.S. Const. art. II, § 2, cl. 2; 5 U.S.C. § 1201 (MSPB); 29 U.S.C. § 153(a) (NLRB), oversee their own departments, and are not subservient to any other principal officer. Thus, the relevant question is whether the MSPB and NLRB can be said to perform only "legislative and judicial functions" and therefore fall within the *Humphrey's Executor* exception. *Seila Law*, 591 U.S. at 216.

In *Humphrey's Executor*, the Supreme Court upheld the constitutionality of a provision prohibiting removal of Federal Trade Commissioners absent "inefficiency, neglect of duty, or malfeasance in office." 295 U.S. at 623. Despite reaffirming the then-recent holding in

*Myers v. United States*, 272 U.S. 52 (1926), that the President has "unrestrictable power * * * to remove purely executive officers," the Court concluded that *Myers* did not control because the FTC Commissioner at issue was "an officer who occupies no place in the executive department and who exercises no part of the executive power vested by the Constitution in the President." *Humphrey's Executor*, 295 U.S. at 628, 632. Instead, *Humphrey's Executor* understood the FTC to be a "body" that "carr[ied] into effect legislative policies" and "perform[ed] other specified duties as a legislative or as a judicial aid." *Id.* at 628. Those duties, according to the Court, "c[ould] not in any proper sense be characterized as an arm or an eye of the executive." *Id.* The Court understood the FTC not to be exercising executive power at all but rather to "ac[t] in part quasi legislatively and in part quasi judicially." *Id.* On that understanding, *Humphrey's Executor* upheld the provision restricting the removal of FTC Commissioners.

Soon after *Humphrey's Executor* was decided, its reach across the Executive Branch was understood to be limited. In 1938, Attorney General Robert Jackson explained that *Humphrey's Executor* did not apply to the Tennessee Valley Authority, which "does not exercise quasi-legislative or quasi-judicial functions," and thus the President enjoyed his "ordinary power to remove executive officers appointed by him." *Power of the*

*President to Remove Members of the Tennessee Valley Authority from Office*, 39 Op. Att'y Gen. 145, 146-47 (1938). Thus, whatever the bounds "of congressional control" for quasi-judicial, quasi-legislative agencies, the President's "exclusive power of removal in executive agencies * * * continued to be asserted and maintained." *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 638 n.4 (1952) (Jackson, J., concurring). That limitation was reiterated in *Seila Law*, which explained that *Humphrey's Executor* is limited to "multimember bodies with 'quasi-judicial' or 'quasi-legislative' functions" that exercise no executive power. 591 U.S. at 216-17 (quoting *Humphrey's Executor*, 295 U.S. at 632).

Under *Humphrey's Executor*, the Supreme Court has sustained removal restrictions for the head of an executive agency on a single occasion. In *Wiener v. United States*, 357 U.S. 349 (1958), the Court held that the President lacked authority to remove a member of the War Claims Commission—a temporary agency created solely to hear and adjudicate compensation claims for "internees, prisoners of war, and religious organizations" who suffered injury "at the hands of the enemy" in World War II. *Id.* at 349-50. Although Congress did not impose any statutory removal restrictions, *id.* at 352, the Court held that the Commission's "tasks require absolute freedom from Executive interference," *id.* at 353. The

Court thus held that the President could not remove a member of the Commission under "[t]he philosophy of *Humphrey's Executor*." *Id.* at 356.

But the assumption on which *Humphrey's Executor* and *Wiener* rest—that those agencies' "quasi-legislative" and "quasi-judicial" powers were not actually executive power under the Constitution—has since been "repudiated" by the Supreme Court. *Seila Law*, 591 U.S. at 239 (Thomas, J., concurring in part and dissenting in part). Executive agencies "since the beginning of the Republic" have made rules and conducted adjudications. *City of Arlington v. FCC*, 569 U.S. 290, 304 n.4 (2013). While "[t]hese activities take 'legislative' and 'judicial' forms," they remain "exercises of— indeed, under our constitutional structure they *must be* exercises of—the 'executive Power.'" *Id.* In other words, *Humphrey's Executor*'s conclusion that the 1935 FTC "did not exercise executive power has not withstood the test of time," *Seila Law*, 591 U.S. at 216 n.2, and "it is hard to dispute that" the agency's powers "would at the present time be considered 'executive,' at least to some degree," *Morrison v. Olson*, 487 U.S. 654, 689 n.28, 691 (1988).

Because *Humphrey's Executor* rests on repudiated reasoning, the decision can be understood as precedential only as to the specific question it resolved. Nothing in the holding of that case blesses removal protections

for multimember agencies that exercise materially different and materially greater executive power than the 1935 FTC. Indeed, *Seila Law* confirms that *Humphrey's Executor*'s holding does not even include "latent powers that the [1935 FTC] may have had" but which were "not alluded to by the Court." *Seila Law*, 591 U.S. at 219 n4. The Court instructed that *Humphrey's Executor* must be understood "on its own terms," *id.*, and that it approved removal restrictions for "an officer who occupies no place in the executive department and who exercises no part of the executive power," *Humphrey's Executor*, 295 U.S. at 628. Thus, while the *Seila Law* dissenters detailed the various and substantial executive powers that the 1935 FTC possessed, including investigations, enforcement actions, adjudications, rulemaking, and litigation authority, "what matters is the set of powers the Court considered as the basis for its decision." *Seila Law*, 591 U.S. at 219 n.4; *see id.* at 286 n.10 (Kagan, J., concurring in the judgment with respect to severability and dissenting in part).

As explained below, both the MSPB and NLRB exercise significant executive power, meaningfully different and greater than that considered in *Humphrey's Executor* and *Wiener*. The district courts erred in adopting overbroad readings of those cases, *see* JA78-82, JA148-65, stretching them beyond their facts to uphold removal protections for agencies that

"possess[] substantially more executive power than the FTC did back in 1935." *CFPB v. Seila Law LLC*, 923 F.3d 680, 683 (9th Cir. 2019) (upholding the CFPB's removal restrictions), *vacated and remanded*, 591 U.S. 197. Neither *Humphrey's Executor* nor *Wiener* extends so far, and after *Seila Law*, "only a very narrow reading of those cases is still good law," meaning there is little "left of the *Humphrey's* exception to the general rule that the President may freely remove his subordinates." *Severino v. Biden*, 71 F.4th 1038, 1050 (D.C. Cir. 2023) (Walker, J., concurring).

Reading *Humphrey's Executor* as confined to the precise considerations then before the Court is consistent with how the Supreme Court and courts of appeals have applied binding precedent whose underlying foundations have since been eroded. For example, *Flast v. Cohen*, 392 U.S. 83 (1968), held that taxpayers have standing to challenge statutes "authorizing the use of federal funds in a way that allegedly violates the Establishment Clause," *Hein v. Freedom From Religion Foundation, Inc.*, 551 U.S. 587, 593 (2007) (plurality opinion). But the Supreme Court has refused to extend *Flast* to encompass other alleged violations of the Constitution or to executive expenditures not dictated by statute. *Id.* at

609-10 (collecting cases). Instead, *Flast* has a "narrow application" and "has largely been confined to its facts." *Id.* at 609.

The courts have likewise narrowly applied *Federal Baseball Club of Baltimore v. National League of Professional Baseball Clubs*, 259 U.S. 200 (1922), which held that the sport of baseball was not subject to the antitrust laws, reasoning that baseball games were played and completed in a single state and thus were not interstate commerce even if teams continually travelled across state lines. *Id.* at 208-09. The Supreme Court has since rejected that understanding of interstate commerce, and it is "clear * * * the principle enunciated in *Federal Baseball* * * * is not to be extended to other businesses." *Haviland v. Butz*, 543 F.2d 169, 175 (D.C. Cir. 1976).

Similarly, the Supreme Court has held that under circumstances presented in *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971); *Davis v. Passman*, 442 U.S. 228 (1979); and *Carlson v. Green*, 446 U.S. 14 (1980), courts may infer a damages cause of action directly under the Constitution. But the Court has stressed that, if there is "any reason to think that Congress might be better equipped to create a damages remedy," the courts may extend those cases no further. *Egbert v. Boule*, 596 U.S. 482, 492 (2022); *accord Buchanan v. Barr*, 71 F.4th 1003 (D.C. Cir. 2023).

**2.** The district courts mistakenly read *Seila Law* as ratifying a rule more tolerant of removal protections for the heads of multimember agencies. In particular, they attributed undue significance to *Seila Law*'s comment that its "severability analysis does not foreclose Congress from pursuing alternative responses," such as attempting to "remed[y] the defect" by "converting the CFPB into a multimember agency." *Seila Law*, 591 U.S. at 237; *see* JA159 (*Wilcox* opinion quoting *Seila Law*); JA82 (similar in *Harris* opinion). But *Seila Law* explained that it "lack[ed] the authority to provide" such a legislative change, as severance was the Court's only "blunt" instrument. 591 U.S. at 237-38. The Court did not purport to pass on the constitutionality of a hypothetical CFPB reconstituted as a multimember commission that *did* "wield substantial executive power," in contravention of the "outermost constitutional limits" the Court had just reiterated. *Id.* at 218.

The district courts' overreading of the statement produces implausible results that the Supreme Court cannot have intended. If the President can be restricted from removing principal officers from multimember bodies without regard to the significance of the authority they exercise, Congress could convert the Departments of Defense, State, and Justice into multimember commissions insulated from the President's

control. *Seila Law*'s tentative observation that "there may be means of remedying the defect in the CFPB's structure," 591 U.S. at 237, cannot reasonably be read to countenance such a result.

Accordingly, so long as the NLRB and MSPB exercise "substantial executive power," *Seila Law*, 591 U.S. at 218, they fall outside the exception for multimember agencies recognized in *Seila Law*. Indeed, even this articulation of the test may be overly tolerant of restrictions on the President's removal authority. After *Seila Law*, the Supreme Court clarified that "Courts are not well-suited to weigh the relative importance of the regulatory and enforcement authority of disparate agencies, and we do not think that the constitutionality of removal restrictions hinges on such an inquiry." *Collins v. Yellen*, 594 U.S. 220, 253 (2021); *see also id.* at 273 (Kagan, J., concurring in part and concurring in the judgment) (stating that the *Collins* majority "extend[ed]" *Seila Law*'s holding and dropped the qualifier of "significant" executive power); *id.* at 293 (Sotomayor, J., concurring in part and dissenting in part) (noting that the "words" "significant executive power" "appear nowhere in today's decision"). Under this articulation, any exercise of executive power subjects an agency head to the President's control. However, as explained below, both the NLRB and MSPB plainly exercise substantial executive authority, so under any

articulation of the test, statutory limitations on the President's removal of officials from those bodies are invalid.

### B. NLRB Members Must Be Removable At Will

The NLRB wields substantial executive authority and is not a "mere legislative or judicial aid." *Seila Law*, 591 U.S. at 218-19. It engages in significant executive adjudication, uses those adjudications to make policy, enacts substantive rules that bind the regulated public, and directs litigation on behalf of the agency in federal court. Given those varied and substantial executive powers, Congress may not restrict the President's constitutional authority to remove the NLRB's Members. [5]

The NLRB adjudicates complaints alleging unfair labor practices and, when it finds such a practice has occurred, issues a broad range of remedies that may include "reinstatement" and "back pay." 29 U.S.C. § 160(b)-(c). And recently, the NLRB has granted "make-whole relief" and ordered employers to pay for "the direct or foreseeable pecuniary harms suffered by affected employees." *International Union of Operating Engineers, Stationary Engineers, Local 39 v. NLRB*, 127 F.4th 58, 80 (9th Cir. 2025).

---

[5] The statutory grounds for removing NLRB members, "neglect of duty or malfeasance in office, but for no other cause," 29 U.S.C. § 153(a), are more circumscribed than *Humphrey's Executor*'s limitations "for inefficiency, neglect of duty, or malfeasance in office," 602 U.S. at 619-20.

As *Seila Law* explained, an agency's ability to "unilaterally issue final decisions awarding legal and equitable relief in administrative adjudications" places it outside of the domain of *Humphrey's Executor*. 591 U.S. at 219.

The NLRB also has robust "enforcement authority" that includes the power to seek monetary and other remedies "against private parties on behalf of the United States in federal court—a quintessentially executive power not considered in *Humphrey's Executor*." *Seila Law*, 591 U.S. at 219; *see* 29 U.S.C. § 160(j) (authority to seek preliminary injunctive relief in federal court); *id.* § 160(e) (authority to petition for enforcement of its orders in courts of appeals). While the agency's General Counsel conducts litigation in federal courts, he does so "in full accordance with the directions of the Board." 20 Fed. Reg. 2175, 2175 (Apr. 6, 1955). [6] In these proceedings, the NLRB is represented by its own attorneys, not those of the Department of Justice. *See* 29 U.S.C. § 154(a).

---

[6] The district court overstated the matter in asserting that the agency's functions "most executive in nature" are assigned to the General Counsel who is removable at will by the President. Dkt. JA154-55. The NLRB is not hermetically sealed from the General Counsel's enforcement functions, as the regulation above demonstrates. And the General Counsel cannot bring an injunctive action in court unless the NLRB provides the necessary authorization. *See* 29 U.S.C. § 160(j).

The NLRB uses its adjudicatory authority not merely to settle individual disputes between parties, but to make executive policy. *See NLRB v. Bell Aerospace Co.*, 416 U.S. 267, 294 (1974). NLRB adjudications "serve as vehicles for the formulation of agency policies" and the NLRB's "choice between rulemaking and adjudication lies in the first instance within the Board's discretion." *Id.* Unlike federal courts that must apply their decisions retroactively, *see Harper v. Virginia Department of Taxation*, 509 U.S. 86, 96-97 (1993), the NLRB may use adjudication to announce new, prospective policies that do not apply to the parties before the agency, *see Amazon.com Services LLC*, 373 NLRB No. 136, 2024 WL 4774441, at *30 (NLRB Nov. 13, 2024) ("We think that future application of the rule we announce today will sufficiently promote the policies of the Act by placing employers on notice that captive-audience meetings are no longer permissible."). The Administrative Procedure Act expressly allows agencies to use adjudicatory procedures to engage in rulemaking like this, 5 U.S.C. §§ 556-557, but that choice of how to make policy does not transform its fundamentally executive nature.

Moreover, the NLRB also promulgates substantive rules of general applicability governing employer-employee relations, which affect a "major segment of the U.S. economy." *Seila Law*, 591 U.S. at 218. The NLRB has

promulgated rules governing collective bargaining in the healthcare industry, 54 Fed. Reg. 16336 (Apr. 21, 1989); notification of employee rights, 76 Fed. Reg. 54006 (Aug. 30, 2011); and joint-employer status, 85 Fed. Reg. 11184 (Feb. 26, 2020); *see also American Hospital Association v. NLRB*, 499 U.S. 606, 609-10 (1991) (rejecting a "general challenge to the Board's rulemaking authority"). Such regulatory decrees, "interpreting a law enacted by Congress to implement the legislative mandate is the very essence of execution of the law," and a "clear[] exercis[e] [of] executive power." *Collins*, 594 U.S. at 254. Indeed, the President's message terminating Wilcox cited her "suppor[t] [of the] new joint employer rule" as a reason why the President concluded that she could not be entrusted with the continued exercise of executive power. JA128. And the NLRB uses its promulgated rules to supervise and direct elections among private citizens, to determine whether a group of employees should be represented by a union, *see American Federation of Labor and Congress of Industrial Organizations v. NLRB*, 57 F.4th 1023, 1028-29 (D.C. Cir. 2023) (discussing 29 U.S.C. § 159), or whether a union's representation authority should be rescinded, 29 U.S.C. § 159(e).

In short, the NLRB "wield[s] executive power" and must be accountable to the President by removal at will. *See Seila Law*, 591 U.S. at

204 ("The President's power to remove—and thus supervise—those who wield executive power on his behalf follows from the text of Article II.").

The district court reached a contrary conclusion based on its assessment that removal protections insulate "an entity entrusted with making impartial decisions about sensitive labor disputes." JA168. But the same essential argument was made and rejected in *Seila Law*. *Cf.* 591 U.S. at 273 (Kagan, J., concurring in part and dissenting in part) (urging that Congress had strong policy justifications for enacting the tenure protections for the CFPB Director that were held invalid by the majority). And in all events, the "nature and breadth of an agency's authority is not dispositive in determining whether Congress may limit the President's [removal] power." *See Collins*, 594 U.S. at 251-52. "Courts are not well-suited to weigh the relative importance of the regulatory and enforcement authority of disparate agencies," and "the constitutionality of removal restrictions [does not] hing[e] on such an inquiry." *Id.*

The district court's errors also stem from misreading *Myers v. United States* as limited to its facts, rather than as standing for the proposition that the President generally has "unrestricted removal power" derived from the vesting clause in Article II. JA160-65. The Supreme Court has rejected that narrow reading and explained that *Myers* stands for the broad and general

principle that "Congress lacks authority to control the President's 'unrestricted power of removal' with respect to 'executive officers of the United States whom he has appointed.'" *Trump*, 603 U.S. at 608-09 (quoting *Myers*, 272 U.S. at 106); *accord Free Enterprise Fund*, 561 U.S. at 492 (describing *Myers* as a "landmark" decision); *Seila Law*, 591 U.S. at 228 ("But text, first principles, the First Congress's decision in 1789, *Myers*, and *Free Enterprise Fund* all establish that the President's removal power is the rule, not the exception."). Indeed, the district court recognized that its own reading of applicable precedent was at odds with the most recent statements from the Supreme Court. The court stated its understanding that *Humphrey's Executor* cannot "be fairly described as an 'exceptio[n] to the general rule of presidential removal authority," and followed this statement with a "*Contra*" citation to *Seila Law*. JA166 n.19.

Because *Seila Law* supplies the relevant test and the NLRB wields substantial executive power, the NLRB does not fall within the limited *Humphrey's Executor* exception. Congress cannot restrict the President's constitutional authority to remove its principal officers. Accordingly, Wilcox was properly removed.

### C. MSPB Members Must Be Removable At Will

Applying the same analysis, the MSPB also exercises substantial executive authority and falls outside the *Humphrey's Executor* exception.

The MSPB "hear[s], adjudicate[s], or provide[s] for the hearing or adjudication" of matters within its jurisdiction and, "subject to otherwise applicable provisions of law, take[s] final action on any such matter." 5 U.S.C. § 1204(a)(1). That final action can be an MSPB order awarding a prevailing employee "reinstatement, backpay, and attorney's fees," *Elgin v. Department of Treasury*, 567 U.S. 1, 6 (2012), or an order disciplining an employee determined to have violated certain laws by potentially removing them from federal service and imposing a civil money penalty, 5 U.S.C. § 1215(a)(3)(A). The MSPB can "order any Federal agency or employee to comply with any order or decision issued by the Board * * * and enforce compliance with any such order." *Id.* § 1204(a)(2).

The MSPB's statutory enforcement authority permits the agency to order "corrective action," *Kerr v. National Endowment for the Arts*, 726 F.2d 730, 733 (Fed. Cir. 1984), including the ability to withhold pay from federal employees who fail to comply with the MSPB's orders, 5 U.S.C. § 1204(e)(2)(A). Thus, the agency has a longstanding policy of threatening individual federal employees with monetary sanctions unless they

implement the MSPB's directives. *See, e.g.*, *Smith v. Department of Justice*, 28 M.S.P.R. 696, 699-700 (MSPB 1985) (order to "show cause why [money] sanctions * * * should not be imposed against G. R. McCune, the agency's Regional Director, and the official named by the agency as responsible for its continued noncompliance"); *McKenna v. Department of the Navy*, 105 M.S.P.R. 373, 383 (MSPB 2007) (ordering agency "to identify the individual who is responsible for ensuring compliance" to facilitate potential "sanctions, pursuant to 5 U.S.C. § 1204(a)(2) and (e)(2)(A)"); *Gilmore v. Department of Defense*, 2024 WL 165821, at *6 (MSPB Jan. 12, 2024) ("The agency is reminded that, if it fails to provide adequate evidence of compliance" the MSPB may withhold pay from "the responsible agency official"). That power to impose "monetary penalties" on federal employees—who may be caught between their own agency's directives and potentially contrary orders of the MSPB—is a "quintessentially executive power not considered in *Humphrey's Executor*." *Seila Law*, 591 U.S. at 219.

The MSPB can also *sua sponte* review and invalidate rules and regulations issued by the Office of Personnel Management, another executive agency, and further order other federal agencies to "cease compliance" with such rules. 5 U.S.C. § 1204(f). A single MSPB Member can stay thousands of personnel actions taken by other Executive Departments.

Order on Stay Request, *Special Counsel ex rel. Doe v. Department of Agriculture* (MSPB Mar. 5, 2025), https://perma.cc/8RH3-ZRWN. The MSPB also has authority to send its own attorneys (not Department of Justice attorneys) to litigate civil actions outside the Supreme Court in connection with any of its functions. *Id.* § 1204(i); *see also Buckley v. Valeo*, 424 U.S. 1, 138-40 (1976) (recognizing interpreting and enforcing law through litigation as executive function). And under certain circumstances, the MSPB itself is the named respondent (and thus a litigant) in judicial proceedings reviewing MSPB decisions. *See* 5 U.S.C. § 7703(a)(2).

Additionally, if a federal agency seeks to remove an administrative law judge—an inferior officer under the Constitution who wields "significant authority" within the Executive Branch, *Lucia v. SEC*, 585 U.S. 237, 246 (2018)—the MSPB first holds a hearing and determines whether there is "good cause" for the officer's removal. 5 U.S.C. § 7521(a). The MSPB thus plays a significant role in the removal of inferior executive officers, another quintessential executive power.

The district court was mistaken in believing that the MSPB's adjudicatory functions and reports to Congress somehow diminish or compensate for its executive powers. JA82-84. That ignores the key point

that the MSPB exercises executive authority and is therefore not comparable to the FTC as understood by the Supreme Court in *Humphrey's Executor* and *Seila Law*. According to those decisions, "the FTC (as it existed in 1935)" exercised "'no part of the executive power.'" *Seila Law*, 591 U.S. at 215 (quoting *Humphrey's Executor*, 295 U.S. at 628). The MSPB clearly does, as explained above.

In all events, this Court has explained that even purely adjudicatory bodies are not intrinsically separate and independent from presidential control. *Kalaris v. Donovan*, 697 F.2d 376, 395-96 (D.C. Cir. 1983) (holding that members of the purely adjudicatory Benefits Review Board were removable at will, notwithstanding *Humphrey's Executor* and *Wiener*). And that is consistent with the understanding that the Commissioner for Social Security—who oversees "one of the largest administrative judicial systems in the world," Social Security Administration, *Hearings and Appeals*, https://perma.cc/6W8M-C6TB— cannot be insulated from the President's control. *Rodriguez v. SSA*, 118 F.4th 1302, 1313-14 (11th Cir. 2024) (invalidating the Commissioner's removal restrictions at the government's request); *Kaufmann v. Kijakazi*, 32 F.4th 843, 848-49 (9th Cir. 2022) (same).

The district court's assessment that the "MSPB's mission and purpose require independence," JA84-85, does not change the analysis, as explained *supra* p.31. Similar arguments were made in defense of the CFPB, *see Seila Law*, 591 U.S. at 205-06, and yet the Supreme Court did not consider this a reason to uphold removal protections imposed on the Director. The MSPB exercises substantial executive power, as demonstrated by Harris's recent stay of the termination of several thousand probationary employees at the U.S. Department of Agriculture. Indeed, because of its unique functions, the MSPB is particularly situated to frustrate the President's oversight of the Executive Branch by interfering with the President's control over subordinate personnel.

Because the MSPB exercises executive power, it does not fall within the narrow *Humphrey's Executor* exception, and the district court's contrary conclusion is error. *See PHH Corp.*, 881 F.3d at 173 (Kavanaugh, J., dissenting) (describing the MSPB, along with the NLRB, as exercising substantial executive authority). Harris's removal was lawful.

## II. The District Courts Erred In Ordering The Reinstatement Of Principal Officers The President Had Already Removed

**A.** The district courts further erred by ordering that plaintiffs "shall continue to serve" as Members of the MSPB and NLRB, respectively. JA70,

JA138. Such *de jure* reinstatement of a principal officer is beyond the equitable authority of the court to impose because it "impinges on the 'conclusive and preclusive' power through which the President controls the Executive Branch that he is responsible for supervising." *Dellinger v. Bessent*, 2025 WL 559669, at *16 (D.C. Cir. Feb. 15, 2025) (Katsas, J., dissenting) (quoting *Trump*, 603 U.S. at 608-09). As Judge Katsas explained, there would be no doubt of "grave and irreparable" injury if the district court had ordered reinstatement of a dismissed Secretary of State, and any differences between the Department of State and the NLRB or MSPB "g[o] to the extent—not the character—of the President's injury." *Id.* The grant of an impermissibly broad remedy is an independent basis for this Court to reverse the district courts' orders.

The Supreme Court recognized long ago that a court "has no jurisdiction * * * to enjoin the President in the performance of his official duties." *Mississippi v. Johnson*, 71 U.S. (4 Wall.) 475, 501 (1867). The appointment and removal of principal officers is specifically entrusted to the President, *see Swan v. Clinton*, 100 F.3d 973, 979 (D.C. Cir. 1996) (recognizing that "principal officers of the United States * * * must be appointed, and removed, by the President"), and thus a court may not, by injunction, order the reinstatement of a principal officer the President has

removed. Accordingly, when principal officers have been removed from their posts, they generally have challenged that removal in suits for backpay. *See Humphrey's Executor*, 295 U.S. at 618 (challenge sought "to recover a sum of money alleged to be due"); *Myers*, 272 U.S. at 106 (same); *Wiener*, 357 U.S. at 349-51 (same). That rule reflects the obvious Article II problems that arise if a court attempts to reinstate—that is, reappoint—a principal executive officer removed by the President. The President cannot be compelled to retain the services of a principal officer whom he has removed from office.

Moreover, to the extent the district courts concluded that injunctions against the President's subordinates pose no problem, *see* JA170, a federal court may grant only those equitable remedies that were "traditionally accorded by courts of equity." *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 319 (1999). Reinstatement of a public official is not such a remedy. "It is * * * well settled that a court of equity has no jurisdiction over the appointment and removal of public officers." *In re Sawyer*, 124 U.S. 200, 212 (1888). Thus, "the power of a court of equity to restrain by injunction the removal of a [public] officer has been denied in many well-considered cases." *Id.*; *see, e.g.*, *Baker v. Carr*, 369 U.S. 186, 231 (1962) (decisions that "held that federal equity power

could not be exercised to enjoin a state proceeding to remove a public officer" or that "withheld federal equity from staying removal of a *federal* officer" reflect "a traditional limit upon equity jurisdiction"); *White v. Berry*, 171 U.S. 366, 377 (1898) ("[A] court of equity will not, by injunction, restrain an executive officer from making a wrongful removal of a subordinate appointee, nor restrain the appointment of another."); *accord Bessent v. Dellinger*, 145 S. Ct. 515, 517 (2025) (Gorsuch, J., dissenting) (observing that "courts of equity at the time of the founding were apparently powerless" to stop the removal of executive officers).

The district courts' orders cannot be squared with these precedents. The courts declared that Wilcox and Harris remained Members of their respective Boards; ordered that they each "shall continue to serve as a member of the [Board] until her term expires" unless removed in accordance with statutory removal protections, and enjoined subordinate officials from removing plaintiffs. *See* JA70-71, JA138. This amounts to *de jure* reinstatement.[7]

_____

[7] The *Wilcox* court suggested that the government had not contested the court's entry of declaratory relief. JA31. That is true only as to an entry of declaratory relief that the removal was unlawful. Defendants made clear that they contested any declaratory judgment going beyond that. JA178-79, JA183. The court's declaration that plaintiff shall continue to remain a member of the NLRB, JA138, goes well beyond such limited relief and constitutes full reinstatement.

These equitable principles precluding reinstatement of a removed officer apply equally to subordinates. Nothing in *Baker* or *Sawyer* suggests that the longstanding principle that "traditional limit[s] upon equity jurisdiction" prohibit a court from "staying removal of a federal officer" do not apply as long as an injunction runs to a subordinate officer. *See Baker*, 369 U.S. at 231 (citing *In re Sawyer*, 124 U.S. 200; and then citing *Walton v. House of Representatives*, 265 U.S. 487 (1924); *White v. Berry*, 171 U.S. 366). Plus, only the President has the authority to appoint, remove, and supervise agency heads, so any relief ordered by the Court that prevents Harris's or Wilcox's removal "necessarily targets the President." *Dellinger*, 2025 WL 559669, at *13 n.2 (Katsas, J., dissenting). Regardless of whom the order formally applies to, and however styled, an order that has the effect of reinstating a principal executive officer removed by the President violates both Article II and the limits on a court's equitable powers

The district courts relied heavily on *Swan* and *Severino*. JA93-94, JA170-71. But those decisions do not bear the weight the district courts placed on them. In neither case did this Court review, much less sustain, an order like the ones presented here. Rather, the Court considered only its *jurisdiction* over an official's challenge to his removal. At most those cases can be read to stand for the proposition that equitable relief might be

available to require a subordinate officer to allow a plaintiff to exercise some of the privileges of the office such as by "including [him] in Board meetings," or "giving him access to his former office." *Swan*, 100 F.3d at 980; *see also Severino*, 71 F.4th at 1043. The orders issued by the district courts here go well beyond such *de facto* relief; they put Wilcox and Harris back in office and order that each shall continue to serve as a *de jure* Board member until the conclusion of her term.

Moreover, in both *Swan* and *Severino*, the Court recognized that even *de facto* relief—an order directing subordinate officials to treat the officer as not having been removed—might not ultimately be available even if the plaintiff were to prevail on the merits. In *Swan*, the Court recognized that the President could "undercut [the] relief" were he "to insist that" his preferred replacement "occupy the position," 100 F.3d at 980-81, and in *Severino*, the Court noted other potential obstacles and relied on the fact that "at the motion to dismiss stage," the plaintiff needed only to "plausibly allege that relief could be afforded," 71 F.4th at 1043.

The sole issue addressed in *Severino* and *Swan* was whether the limits on the Court's equitable power against the President made the asserted injury non-redressable. *See Severino*, 71 F.4th at 1042 ("[O]ur jurisdiction does not depend on deciding whether an injunction ordering a

presidential appointment would be available or appropriate."). Those cases cannot be read to have rejected the separate longstanding principle that equitable power may not be used to "restrain by injunction the removal of a [public] officer," *In re Sawyer*, 124 U.S. at 212, a principle not briefed or addressed in either of those cases. *Cf. Schindler Elevator Corp. v. Washington Metropolitan Area Transit Authority*, 16 F.4th 294, 299 (D.C. Cir. 2021) (an appellate decision in which a defect "is neither noted nor discussed * * * does not stand for the proposition that no defect existed"). Those cases therefore did not definitively resolve the question presented here. Because neither Swan nor Severino prevailed on the merits, the Court did not need to consider whether equitable relief would have been appropriate against the backdrop of those historic principles to resolve the case. Thus, *Swan* and *Severino* may assist plaintiffs in establishing standing, but they cannot justify the relief the district court entered.

These limitations parallel the difference in the standing and merits analysis in cases where a regulated entity challenges a statutory removal restriction. The standing analysis in those cases is quite generous—the plaintiff need not "prove that the Government's course of conduct would have been different in a 'counterfactual world'" where there was no removal restriction, and need allege only that it had been injured by "an executive

act that allegedly exceeds the official's authority." *Seila Law*, 591 U.S. at 211. But to obtain substantive relief on a removal challenge, a plaintiff must show that the removal restriction "cause[d] harm," *Collins*, 594 U.S. at 259-60, and the courts of appeals regularly deny relief when the plaintiff cannot identify prejudice actually caused by the removal restriction, *see, e.g.*, *K & R Contractors, LLC v. Keene*, 86 F.4th 135, 149 (4th Cir. 2023) (collecting cases).

The district courts were also wrong to conclude that the merger of law and equity renders obsolete the cases holding that reinstatement is beyond the equitable power of the court. *See* JA91-93, JA171 n.22. The Supreme Court has made clear that the scope of a court's equitable powers is determined by the scope of equity jurisdiction at the Founding, regardless of the later merger of law and equity. *See Grupo Mexicano*, 527 U.S. at 318-19; *see also Great-West Life & Annuity Insurance Co. v. Knudson*, 534 U.S. 204, 212 (2002) (looking back to "days of the divided bench" to determine availability of equitable relief). Indeed, in *Baker*, the Supreme Court reiterated the principle that courts may not enjoin removals of federal officers after the law-equity merger. *See* 369 U.S. at 231. Nor do cases like *Sampson v. Murray*, 415 U.S. 61 (1974), *Vitarelli v. Seaton*, 359 U.S. 535, 546 (1959), or other cases which concern reinstatement of *employees* help

plaintiffs' cause. Unlike with government employees, there is no comprehensive statutory scheme governing principal officers that could displace the historical limitations on a court's equitable powers. And those cases do not consider the unique separation-of-powers concerns that accompany a court using its equitable authority to reinstate an official entrusted with the extensive discretion vested in a principal executive officer.

Finally, the fact that legal remedies might have been available to contest title to public offices does not justify the imposition of reinstatement through the court's equitable authority even after the merger of law and equity. *See* JA171 n.22. Historically, in some cases, individuals have sought mandamus to contest title to an office. *See Ex parte Hennen*, 38 U.S. (13 Pet.) 230, 256 (1839) (court clerk); *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 167-68 (1803) (justice of the peace). And the Supreme Court has identified *quo warranto* as a "remedy for trying the title to office," *Delgado v. Chavez*, 140 U.S. 586, 590 (1891), though a successful *quo warranto* suit will generally only oust an unlawful office holder and does not reinstate a removed plaintiff. *See* 2 William Blackstone, *Commentaries on the Laws of England* 263 [178] (George W. Childs ed. 1868) (remedy for *quo warranto* is either "a judgment of *ouster*" or a seizure of the office

"into the king's hands, to be granted out again to whomever he [the king] shall please").

Those legal remedies come with guardrails that equitable remedies lack. A mandamus plaintiff must show a "clear" right to relief. *Heckler v. Ringer*, 466 U.S. 602, 616 (1984). And a *quo warranto* plaintiff must satisfy various procedural requirements, such as securing the approval of the Attorney General, U.S. Attorney, or court before suing. *See* D.C. Code §§ 16-3501 to 16-3503; *Andrade v. Lauer*, 729 F.2d 1475, 1497-98 (D.C. Cir. 1984).

**B.** While both district courts declined to enter a writ of mandamus, both erred in suggesting that plaintiffs would be entitled to mandamus relief in the absence of injunctive relief. *See* JA103-05, JA171 n.22. For the reasons explained above, plaintiffs cannot show that either has a "clear" right to relief. *Heckler*, 466 U.S. at 616. [8]

This Court should not construe the district courts' injunctions as relief in the nature of mandamus, nor should it affirm on the alternative ground that mandamus relief would be available. Mandamus "is drastic"

_____

[8] As this Court recognized in *In re Cheney*, 406 F.3d 723, 728-29 (D.C. Cir. 2005) (en banc), Rule 81(b) of the Federal Rules of Civil Procedure abolished the writ of mandamus in the district courts. Courts may still grant relief "in the nature of mandamus," *id.* at 729, provided the traditional standards for mandamus relief have been established.

and "is available only in extraordinary situations." *In re Cheney*, 406 F.3d 723, 729 (D.C. Cir. 2005) (en banc) (quotation marks omitted). It requires that a petitioner establish that "(1) the plaintiff has a clear right to relief; (2) the defendant has a clear duty to act; and (3) there is no other adequate remedy available to plaintiff." *In re National Nurses United*, 47 F.4th 746, 752 n.4 (D.C. Cir. 2022). Mandamus is "inappropriate except where a public official has violated a 'ministerial' duty." *Consolidated Edison Co. v. Ashcroft*, 286 F.3d 600, 605 (D.C. Cir. 2002). This Court has recognized that such a question is "difficult," *Swan*, 100 F.3d at 981, and plaintiffs have not established that the President owes either a "clear nondiscretionary duty," *Heckler*, 466 U.S. at 616. The President's selection of who should lead an Executive Branch agency is certainly not a mere ministerial task. Moreover, plaintiffs have alternative remedies, including actions for backpay. Mandamus would not be appropriate.

Moreover, this Court has long recognized that "mandamus is itself governed by equitable considerations and is to be granted only in the exercise of sound discretion." *13th Regional Corp. v. U.S. Department of Interior*, 654 F.2d 758, 760 (D.C. Cir. 1980) (quoting *Whitehorse v. Illinois Central Railroad Co.*, 349 U.S. 366, 373 (1955); *see also In re Cheney*, 406 F.3d at 729 (explaining that mandamus is discretionary "even if plaintiff

overcomes all these hurdles"). It must "be found by a court to be clear and compelling on both legal and equitable grounds for a writ to issue." *13th Regional Corp.*, 654 F.2d at 760. After *Seila Law*, the removal restrictions here are unconstitutional—and at a minimum their constitutionality is highly suspect. *Cf. Consumers' Research v. Consumer Product Safety Commission*, 98 F.4th 646, 650 (5th Cir. 2024) (Oldham, J., joined by seven other judges, dissenting from the denial of rehearing en banc). Especially given that the equitable factors weigh decisively in the government's favor, mandamus would not be proper.

**C.** Even where a plaintiff has prevailed on the merits, "[t]he decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court, reviewable on appeal for abuse of discretion." *Anatol Zukerman & Charles Krause Reporting, LLC v. U.S. Postal Service*, 64 F.4th 1354, 1361 (D.C. Cir. 2023) (quoting *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006)). Thus, even if the Court concludes that plaintiffs should prevail on the merits, it should reverse the grants of permanent injunctions because the courts abused their discretion in granting equitable relief to reinstate plaintiffs. This Court has made clear that when granting a permanent injunction, the district court must consider "the balance of hardships between the plaintiff and defendant" and whether

"the public interest would not be disserved by a permanent injunction." *Id.* at 1364. The "public interest and balance of equities factors merge" where, as here, "the government is the party" against whom an injunction is sought. *MediNatura, Inc. v. FDA*, 998 F.3d 931, 945 (D.C. Cir. 2021).

As discussed above, the district courts' orders work an extraordinary harm to the President's authority to exercise "all of" "the 'executive Power'" of the United States. *Seila Law*, 590 U.S. at 203. As a result of these orders, two people whom the President has chosen to remove from office will exercise executive power over the President's objection. Indeed, Wilcox will likely serve as the decisive, tie-breaking vote on the NLRB, which without her would lack a quorum and be split 1-1 on partisan lines. NLRB, *About NLRB: The Board*, https://perma.cc/SPM9-H7AA; 29 U.S.C. § 153(b). That sort of harm to the Executive, and to the separation of powers, is transparently irreparable.

Conversely, forgoing reinstatement would not harm plaintiffs. Although removal deprives each of her employment and salary, the traditional remedy for such claims has been an award of backpay, not reinstatement. Backpay would not enable plaintiffs to perform the duties of their former offices, but those duties are vested in the offices, and plaintiffs have no personal right to exercise the powers of an office after having been

removed. This Court has recognized that when faced with a challenge to the removal of a principal officer, the equities favor the President. Op. 5, *Dellinger v. Bessent*, No. 25-5052, (D.C. Cir. Mar. 10, 2025) (per curiam).

Finally, if the government prevails after all review, any actions the Boards take with plaintiffs as Members will be called into question and potentially voidable, upsetting expectations and risking placing regulated parties in a whipsaw. *See New Process Steel, L.P. v. NLRB*, 560 U.S. 674, 688 (2010) (holding the NLRB cannot operate with quorum less than three)*; see also Collins*, 594 U.S. at 259-60 (explaining that plaintiffs contesting agency action based on unconstitutional removal restrictions can show "compensable harm" if "the President had attempted to remove [an agency head] but was prevented from doing so by a lower court decision holding that he did not have 'cause' for removal"). The need for future Boards to reconsider those prior actions may interfere with its ability to timely process other pending matters. Plaintiffs' claimed equities cannot outweigh the grave and unprecedented harm this injunction causes to the separation of powers and the President's authority to "take Care that the Laws be faithfully executed." U.S. Const. art. II, § 3.

# CONCLUSION

This Court should reverse the district courts' orders.

Respectfully submitted,

YAAKOV M. ROTH
  *Acting Assistant Attorney General*

ERIC D. McARTHUR
  *Deputy Assistant Attorney General*

MARK R. FREEMAN
MICHAEL S. RAAB
JOSHUA M. SALZMAN
LAURA E. MYRON
 */s/ Daniel Aguilar*
DANIEL AGUILAR
  *Attorneys, Appellate Staff*
  *Civil Division*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 305-1754*

# CERTIFICATE OF COMPLIANCE

This motion complies with the type-volume limit of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 10,786 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in 14-point Georgia, a proportionally spaced typeface.

*/s/ Daniel Aguilar*
Daniel Aguilar