**SCHEDULED FOR ORAL ARGUMENT MAY 16, 2025**

No. 25-5037, 25-5055

IN THE

# United States Court of Appeals for the District of Columbia Circuit

CATHY A. HARRIS, IN HER PERSONAL CAPACITY AND IN HER OFFICIAL CAPACITY AS MEMBER OF THE MERIT SYSTEMS PROTECTION BOARD,

*Plaintiff-Appellee,*

v.

SCOTT BESSENT, IN HIS OFFICIAL CAPACITY AS SECRETARY OF THE TREASURY, *et al.*,

*Defendants-Appellants.*

_____

On Appeal from the United States District Court
for the District of Columbia, No. 1:25-cv-00412

**BRIEF OF *AMICI CURIAE* FORMER BOARD MEMBERS AND GENERAL COUNSEL OF THE MERIT SYSTEMS PROTECTION BOARD IN SUPPORT OF APPELLEE**

ELIZABETH C. LOCKWOOD
KATHRYN M. ALI
MEGHAN C. PALMER
ALI & LOCKWOOD LLP
501 H Street NE, Suite 200
(202) 651-2475
liz.lockwood@alilockwood.com
katie.ali@alilockwood.com
meghan.palmer@alilockwood.com

*Counsel for Amici Curiae
James M. Eisenmann, Raymond Limon &
Jessica Parks*

April 09, 2025

**CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES**

Except for *amici* James M. Eisenmann, Raymond Limon, and Jessica Parks and any other *amici* who have not yet entered an appearance in this case as of the filing of the Brief of Appellee, all parties, intervenors, and amici appearing in this Court are listed in Appellee's Brief.

References to the ruling at issue and related cases appear in Appellee's Brief.

**CERTIFICATE OF COUNSEL REGARDING AUTHORITY TO FILE**

Pursuant to FRAP 29(a)(2), all parties have consented to the filing of this brief.

Pursuant to D.C. Circuit Rule 29(d), amici state that a separate amici curiae brief is necessary due to their distinct expertise and interests, as set forth below in the section entitled "INTERESTS OF THE AMICI AND SUMMARY OF ARGUMENT."


DATED: April 9, 2025                    */s/ Elizabeth C. Lockwood*
                                         Elizabeth C. Lockwood
                                         Ali & Lockwood LLP
                                         *Counsel for Amici Curiae*

## TABLE OF CONTENTS

INTERESTS OF AMICI CURIAE AND SUMMARY OF ARGUMENT ..............1

ARGUMENT .................................................................................................2

    I.    The MSPB is the Capstone of This Country's Development of a Merit-based Civil Service.......................................................................2

    II.    The MSPB is an Adjudicatory Body with Narrow Jurisdiction and Authority...........................................................................................4

    III.    The District Court Correctly Concluded that the MSPB's Duties are Quasi-Judicial. ................................................................................12

CONCLUSION ...........................................................................................13

APPENDIX A: Analysis of MSPB Decisions (2000-2023)....................................15

CERTIFICATE OF COMPLIANCE......................................................................17

# TABLE OF AUTHORITIES

**Cases**

*Bowsher v. Synar*, 478 U.S. 714 (1986)....................................................................9

*Brown v. Dep't of the Air Force*, 2022 WL 1572406 (M.S.P.B. May 18, 2022)......6

*Douglas v. Veterans Admin.*, 5 M.S.P.R. 280 (1981) ...............................................6

*Elder v. Dep't of the Air Force*, 124 M.S.P.R. 12 (2016)..........................................6

*Hollander v. Off. of Pers. Mgmt.*, 39 M.S.P.R. 195 (1988)......................................7

*Horner v. Hollander*, 895 F.2d 759 (Fed. Cir. 1990) ...............................................7

*Humphrey's Executor v. United States*, 295 U.S. 602 (1935) ................................12

*Special Counsel v. Dep't of Transp.*, 74 M.S.P.R. 155 (1997)...............................11

*Starkey v. Dep't of Housing and Urban Development*, 2024 MSPB 6 (2024)..........5

*Warren v. Dep't of Army*, 804 F.2d 654 (Fed. Cir. 1986) .........................................6

*Whitmore v. Dep't of Labor*, 680 F.3d 1353 (Fed. Cir. 2012)..................................5

**Statutes**

5 U.S.C. § 1201 ..........................................................................................................5

5 U.S.C. § 1204 ..................................................................................................... 9, 12

5 U.S.C. § 1212 ..........................................................................................................4

5 U.S.C. § 1214 ..................................................................................................... 10, 11

5 U.S.C. § 1216 ..........................................................................................................4

5 U.S.C. § 7521 ........................................................................................................10

5 U.S.C. § 7703 ..........................................................................................................7

Lloyd-LaFollette Act of 1912, 37 Stat. 539, 555, § 6 (Aug. 24, 1912)....................3

Pendleton Act, 47 Cong. Ch. 27, 22 Stat. 403 (1883) ...........................................2, 3

Whistleblower Protection Act of 1989, Pub. L. 101–12, 103 Stat. 16 (1989) ..........4

**Regulations**

5 C.F.R. § 1201.115 .................................................................................6

5 C.F.R. § 1201.117 .................................................................................7

5 C.F.R. § 1201.136(d) ...........................................................................11

5 C.F.R. § 1201.137 ...............................................................................10

5 C.F.R. § 1201.143 ...............................................................................10

5 C.F.R. § 1201.144 ...............................................................................10

5 C.F.R. § 1201.145 ...............................................................................10

5 C.F.R. § 1201.146(a–b) .......................................................................10

5 C.F.R. § 1201.3 .....................................................................................5

**Other Authorities**

14 Cong. Rec. 206 (1882) ........................................................................3

S. Rep. No. 95-969, 1978 U.S.C.C.A.N. 2723 (1978) (Conf. Rep.) .........4

## INTERESTS OF AMICI CURIAE AND SUMMARY OF ARGUMENT[1]

James M. Eisenmann, Raymond Limon, and Jessica Parks respectfully submit this brief as *amici curiae* in support of Appellee Cathy Harris. *Amici* were appointed under three different Presidents to serve in various capacities at the Merit Systems Protection Board ("MSPB" or the "Board"). Mr. Eisenmann was appointed by then MSPB Chairman Susan T. Grundmann to be General Counsel of the MSPB in January 2010.[2] He served in that position until January 2013, when he was appointed Executive Director of the Board. Mr. Eisenmann remained as Executive Director until he resigned from MSPB in September 2018. Mr. Limon was nominated by President Joe Biden to serve as a Board Member in 2021, and later served as Vice Chairman and Acting Chairman before he retired on February 28, 2025, the last day of his term. Ms. Parks was nominated by President George H.W. Bush to serve as a Board Member in 1990, and was named Vice Chair of the Board by President Bill Clinton in 1993 before concluding her term in 1995.[3]

---

[1] No counsel for a party authored this brief in whole or in part, no party or counsel for a party contributed money that was intended to fund preparing or submitting this brief, and no person other than *amici* or their counsel contributed money that was intended to fund the preparation or submission of this brief.

[2] Mr. Eisenmann previously represented Appellee before the district court below, but he does not represent any party on appeal.

[3] Although Ms. Parks is a member at Kator, Parks, Weiser & Wright, PLLC, she has had no involvement in the firm's representation of Ms. Harris and signs this brief in her personal capacity.

*Amici curiae* submit this brief to clarify the MSPB's mission and its limited adjudicatory functions. *Amici* have seen how important it is to protect the integrity of the civil service, and to ensure that federal employees can serve the public good without fear of retaliation. In *amici*'s experience, Board Members' for-cause removal protection is critical to maintaining the Board's impartiality and fostering independent and consistent review of adverse employment actions without fear of reprisal in the wake of political transitions.

*Amici* provide a brief summary of the history of the modern-day civil service to give context for the MSPB's creation and mission. The MSPB was designed to protect and promote the country's merit-based civil service, and furthers that mission by exercising its narrow jurisdiction to review and adjudicate appeals of certain adverse employment actions and issue decisions that are reviewable by an Article III court. These adjudicatory functions are the Board's core and predominant activities, as the District Court correctly concluded.

## ARGUMENT

### I.     The MSPB is the Capstone of This Country's Development of a Merit-based Civil Service.

The country's modern merit-based civil service is rooted in the 1883 Pendleton Act, which sought to combat the patronage, or "spoils" system, and created a Civil Service Commission to oversee a competitive examination system

for public servants.[4] The Act was an important milestone in a multigenerational debate over the patronage system, under which the civil service was routinely reshuffled by the reigning political party to award the President's supporters and their friends and families.[5] The Pendleton Act set the stage for career federal employees to be selected for their "fitness, capacity, honesty [and] fidelity," rather than solely their "personal fidelity and partisan activity."[6]

Over time, Congress has reaffirmed and expanded protections for civil servants. This includes the guarantee that certain civil servants could be removed only for cause,[7] the adoption of protections for whistleblowing civil servants,[8] and the requirement that civil servants receive a written record of charges against them before dismissal.[9] These efforts to bolster the country's civil service culminated in

---

[4] Pendleton Act, 47 Cong. Ch. 27, 22 Stat. 403 (1883).

[5] 14 Cong. Rec. 206 (1882) (under the system that existed prior to the Act's passage, "the President and his Cabinet and those who are charged with the responsibility [of selecting government officials had] remitted the question of fitness to their own partisan friends" in Congress who then helped secure nominations for "friends and families and connections and aids and deputies [who] will serve their purpose.")

[6] 14 Cong. Rec. 206 (1882).

[7] Lloyd-LaFollette Act of 1912, 37 Stat. 539, 555, § 6 (Aug. 24, 1912) ("no person in the classified civil service of the United States shall be removed therefrom except for such cause as will promote the efficiency of said service and for reasons given in writing . . . ").

[8] *Id.* (providing that "the presenting . . . of any grievance or grievances to the Congress or any Member thereof shall not constitute or be cause for reduction in rank or compensation or removal of such person or groups of persons from" the civil service).

[9] *Id.* (requiring that "copies of charges, notice of hearing, answer, reasons for removal, and of the order of removal . . . shall be furnished to the person affected").

the Civil Service Reform Act of 1978 ("CSRA"), which implemented additional measures to protect career federal employees from undue partisan political influence, and to otherwise adopt "the most effective possible civil service; that is, one in which employees are hired and removed on the basis of merit and one which is accountable to the public through its elected leaders."[10] The CSRA also created the Merit Systems Protection Board and Office of Special Counsel ("OSC") to "discourage subversions of merit principles"[11] and adopted additional protections for "employees who disclose government illegality, waste, and corruption."[12] The OSC investigates allegations of prohibited personnel practices, prosecutes violators of civil service rules and regulations, and enforces the Hatch Act.[13] Although it was originally an office of the Board, the OSC now functions as an independent Executive Branch agency charged with independently prosecuting certain cases before the Board.[14]

## II.   The MSPB is an Adjudicatory Body with Narrow Jurisdiction and Authority.

In the nearly five decades since it was created, the MSPB's core mission has remained the same: to protect the country's merit and performance-based,

---

[10] S. Rep. No. 95-969, 1978 U.S.C.C.A.N. 2723, 2724–25 (1978) (Conf. Rep.) (report of the Senate Committee on Governmental Affairs to accompany S. 2640).
[11] *Id.* at 2729.
[12] *Id.* at 2730.
[13] *See* 5 U.S.C. §§ 1212, 1216.
[14] *See* Whistleblower Protection Act of 1989, Pub. L. 101–12, 103 Stat. 16 (1989).

nonpartisan workforce. By law, the Board must be bipartisan—with no more than two of the three Board members from the same political party who serve staggered appointments—and comprised of individuals with a "demonstrated ability, background, training or experience" to carry out the Board's functions. 5 U.S.C. § 1201.

1. The Board's primary statutory function is to adjudicate certain federal employee appeals as authorized by federal regulations and pursuant to its appellate jurisdiction. See 5 C.F.R. § 1201.3. This includes terminations, suspensions without pay, adverse actions taken "because of the appellant's whistleblowing or other protected activity," 5 C.F.R. § 1201.3(b)(2),[15] and terminations of probationary employees "motivated by partisan political reasons[.]" 5 C.F.R. § 1201.3(a)(3).[16]

These appeals are first heard by an Administrative Judge ("AJ"), who issues an initial decision that identifies material issues of fact and law, summarizes the evidence, makes credibility determinations, and issues conclusions of law. Appellants and agencies may then appeal the AJ's initial decision to the Board,

---

[15] *See, e.g.*, *Whitmore v. Dep't of Labor*, 680 F.3d 1353 (Fed. Cir. 2012) (seminal case involving the retaliatory termination of a Department of Labor employee for whistleblowing activity related to reporting and disclosure failures by the Occupational Safety and Health Administration).

[16] *See, e.g.*, *Starkey v. Dep't of Housing and Urban Development*, 2024 MSPB 6 (2024) (denying agency petition seeking to reverse Administrative Judge decision finding political affiliation discrimination in firing of probationary employee).

which may only overturn an agency decision if the appellant shows one of the four errors prescribed by federal regulation, 5 C.F.R. § 1201.115, including that: (i) a "material" factual error of "sufficient weight to warrant an outcome different from that of the initial decision," *Elder v. Dep't of the Air Force*, 124 M.S.P.R. 12, ¶ 36 (2016); (ii) the AJ's decision is based on an "erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case," *Brown v. Dep't of the Air Force*, 2022 WL 1572406, *1 (M.S.P.B. May 18, 2022); (iii) the AJ's rulings "were not consistent with required procedures or involved abuse of discretion, and the resulting error affected the outcome of the case," *id.*; or (iv) "new and material evidence or legal argument is available that, despite petitioner's due diligence, was not available when the record closed." *Id.*

And when assessing an agency's action, the MSPB must give the presiding agency considerable deference. *Warren v. Dep't of Army*, 804 F.2d 654, 656 (Fed. Cir. 1986) (MSPB must give "deference to the judgment of each agency of the employee's performance in light of the agency's assessment of its own personnel needs and standards" (internal quotation marks omitted)); *Douglas v. Veterans Admin.*, 5 M.S.P.R. 280, 306 (1981) (the "Board's role" in assessing agency's penalty "is not to insist that the balance be struck precisely where the Board would choose to strike it," but to instead "assure that the agency did conscientiously consider the relevant factors and did strike a reasonable balance within tolerable

limits of reasonableness"); *Hollander v. Off. of Pers. Mgmt.*, 39 M.S.P.R. 195, 198–99 (1988), *aff'd sub nom. Horner v. Hollander*, 895 F.2d 759 (Fed. Cir. 1990) (Board will "ordinarily give great deference" to the agency's interpretation of a statute "with whose implementation it is charged," unless there are "compelling reasons to conclude that such an interpretation is erroneous or unreasonable").

To assist in its consideration of a petition, the Board may hear oral argument, request additional briefing, remand the appeal to the AJ for additional proceedings, or affirm, reverse, modify or vacate the AJ's initial decisions. 5 C.F.R. § 1201.117. Employees and applicants "adversely affected or aggrieved by a final order or decision by the" MSPB "may obtain judicial review" in an Article III court, and the Director of the Office of Personnel Management ("OPM") can petition for judicial review of Board decisions that have a "substantial impact on a civil service law, rule, regulation, or policy directive." 5 U.S.C. § 7703.

In practice, the Board's review process is extremely deferential to the agency. The vast majority of agency decisions are affirmed—nearly 90% since 2000.[17] These decisions are almost always unanimous (and therefore not along partisan lines). For example, based on *amici*'s familiarity with internal Board statistics from March 2022

---

[17] *See* Appendix A, Analysis of MSPB Decisions (2000–2023).

to March 2025, it is estimated that more than 99% of decisions were unanimous during that three-year period alone.

The Board's decision-drafting process is also adjudicatory in nature and designed to reach consensus based on established MSPB and federal case law. Unlike other administrative agencies, the Board's decisions are drafted by a cadre of career attorneys in the Office of Appeals Counsel ("OAC"),[18] who draft opinions for Board members based on Board and applicable court precedent. The career attorneys in the Office of Appeals Counsel are trained to draft opinions not for a single Board member, but for the Board as a whole. Further, it is not the practice for individual Board members to instruct OAC attorneys to draft initial opinions to get to a certain result. Instead, because the Board's case law remains consistent and linear despite changes in the Board's composition, OAC attorneys draft opinions that routinely garner unanimous support—a clear indication that the Board's decisions are not swayed by partisan affiliations. This entire appeals process is therefore designed to provide an orderly and consistent consideration of federal employment appeals

---

[18] To be clear, the Office of Appeals Counsel is not organizationally housed within any particular Board member's office but is a separate office headed by a career senior executive.

before the MSPB and within the Court of Appeals for the Federal Circuit—further underscoring the adjudicatory nature of the Board's work.

Finally, although the Board may order an agency or employee to comply with their final decision, it lacks any authority to enforce those orders. Federal statute provides that the Board may order that a non-compliant employee "shall not be entitled to receive payment for service" during a period of non-compliance, 5 U.S.C. § 1204(E)(2)(A), but it is widely known within the MSPB that this statute is unconstitutional because it impermissibly empowers the Comptroller General of the United States—an Article I official—to retain control over an executive branch act. *See Bowsher v. Synar*, 478 U.S. 714, 736 (1986) (finding that the "powers vested in the Comptroller General" under an analogous federal statute "violate the command of the Constitution that the Congress play no direct role in the execution of the laws"). And although *amici* are aware of rare instances where a Board's decision has referenced its statutory authority to withhold salaries to enforce compliance, *amici* are aware of no instance where this power has actually been invoked by the MSPB since *Bowsher* was decided. As a result, if the statute was formally revoked, it would not change the Board's practices at all.

2. The Board also has limited original jurisdiction over (i) certain actions brought by the Special Counsel; (ii) requests for informal hearings by career appointees removed from the Senior Executive Service for performance

deficiencies; and (iii) certain adverse actions against administrative law judges ("ALJs"), *see* 5 U.S.C. § 7521. The Board's exercise of original jurisdiction over career appointees' informal hearings and ALJ adverse actions is narrow. With regard to the informal hearings, the Board simply designates an official to conduct an informal hearing regarding the career appointees' removal, which is not subject to appeal. *See* 5 C.F.R. §§ 1201.143–1201.145. And the Board has limited authority to consider agency proposals to remove, suspend, furlough, or enter a reduction in pay or grade for an ALJ. 5 C.F.R. § 1201.137.

The Board's authority to review certain matters upon the Office of Special Counsel's request is similarly narrow and entirely reactionary. If the Special Counsel "determines that there are reasonable grounds to believe that the personnel action was taken, or is to be taken, as a result of a prohibited personnel practice," it may request "any member of" the Board to order a stay. 5 U.S.C. § 1214(b)(1)(A)(i).[19] The Board member has very little discretion when considering such a request, and "shall order" the requested stay unless they determine that "under the facts and circumstances involved, such a stay would not be appropriate." 5 U.S.C. § 1214(b)(1)(A)(ii). The presumption in favor of a stay is so strong that if the request

---

[19] The Board may also issue "any order that may be necessary to protect a witness or other individual from harassment during an investigation by the Special Counsel" upon motion by the Special Counsel. 5 C.F.R. § 1201.146(a–b).

is not denied within 3 calendar days, it "shall be granted." 5 U.S.C. § 1214(b)(1)(A)(iii).

Moreover, the stay itself is simply designed to "maintain the *status quo ante* while OSC and the agency resolve the disputed matter," and to "minimize the consequences of an alleged prohibited personnel practice" in the meantime. *Special Counsel v. Dep't of Transp.*, 74 M.S.P.R. 155, 157 (1997). An extension request— considered by the full Board, 5 U.S.C. § 1214(b)(1)(B)—is reviewed with similar deference: the Board must review the record in the light most favorable to OSC and grant the extension request so long as the OSC's underlying claim is not "clearly unreasonable." *Id.* at 158. The stay may be terminated by the Board at any time. *See* 5 C.F.R. § 1201.136(d).

A review of all of the publicly available MSPB annual reports—from 2000 through 2023—confirms that the Board's exercise of its original jurisdiction accounts for an incredibly small percentage of its adjudicatory work. Of the over 20,000 decisions that the Board has issued in that time frame, more than 98% were issued in appeals related to a federal employee personnel actions—leaving less than 2% brought pursuant to the Board's original jurisdiction.[20] Board decisions in cases

---

[20] *See* Appendix A, Analysis of MSPB Decisions (2000–2023).

where OSC requested a stay accounted for just 0.6% of all of the cases that the Board decided during that nearly 25-year period.[21]

3. The Board also has authority to review OPM rules and regulations upon request, or on its own motion, to determine if the regulations or the implementation of regulations cause a person to commit a prohibited personnel practice. 5 U.S.C. § 1204(f)(1). In our experience—and based on reporting by the MSPB—these types of review are exceedingly rare. MSPB's annual reports since 2000 confirm that petitions for review of OPM rules and regulations accounted for just 0.5% of MSPB's decisions.[22] Those same reports do not report any instance where the MSPB issued a *sua sponte* decision regarding any OPM rule or regulation, and *amici* can recall no instance during their tenure when such a review occurred.

## III.   The District Court Correctly Concluded that the MSPB's Duties are Quasi-Judicial.

*Amici*'s experience at the MSPB—and intimate understanding of the Board's statutory and regulatory authority—is consistent with the District Court's conclusion that the Board's duties are "quasi judicial." JA83 (citing *Humphrey's Executor v. United States*, 295 U.S. 602, 624 (1935)). The vast majority of the Board's work—and over 98% of the decisions it issues—relates to petitions for review of federal employees' claims, all of which are reviewable by Article III courts. JA83

---

[21] *Id.*

[22] *Id.*

(emphasizing that the MSPB "spends nearly all of its time adjudicating 'inward-facing personnel matters' involving federal employees). And it must "passively wait" for these cases to be brought before it. *Id.* Although a statute purports to give the MSPB authority to enforce compliance with its orders, *amici*—including MSPB's former General Counsel—have confirmed it was widely understood that MSPB was constrained from exercising that (now-declared unconstitutional) statutory authority, and are aware of no instance when such authority was used. And although the Board may grant OSC-initiated stays and conduct *sua sponte* reviews of OPM regulations, historical data and *amici*'s experience confirm that these actions are rare and far overshadowed by the Board's primary mission: adjudicating appeals of federal employees' personnel actions to protect the integrity of the country's civil service system.

## CONCLUSION

For the foregoing reasons, the Court should affirm the District Court's Order granting Plaintiff-Appellee's Motion for Summary Judgment.

Dated: April 09, 2025                    Respectfully submitted,

                                          By: */s/ Elizabeth C. Lockwood*

                                          ELIZABETH C. LOCKWOOD
                                          KATHRYN M. ALI
                                          MEGHAN C. PALMER
                                          ALI & LOCKWOOD LLP
                                          501 H Street NE

Suite 200
(202) 651-2475
liz.lockwood@alilockwood.com
katie.ali@alilockwood.com
meghan.palmer@alilockwood.com

*Counsel for Amici Curiae*
*James M. Eisenmann, Raymond Limon an*
*Jessica Parks*

**Appendix A: Analysis of MSPB Decisions (2000-2023)**

| Year | Total Decisions | Appellate Jurisdiction | | | | Original Jurisdiction | | |
|---|---|---|---|---|---|---|---|---|
| | | Cases Decided | Appeals Granted | | | Cases Decided | OSC Stay Requests | OPM Review |
| 2023 | 1,281 | 1,252 | 234 | 18.7% | | 29 | 9 | 6 |
| 2022 | 440 | 428 | 74 | 17.3% | | 12 | 5 | 2 |
| 2021 | 0 | 0 | 0 | 0.0% | | 0 | 0 | 0 |
| 2020 | 0 | 0 | 0 | 0.0% | | 0 | 0 | 0 |
| 2019 | 2 | 0 | 0 | 0.0% | | 2 | 2 | 0 |
| 2018 | 11 | 0 | 0 | 0.0% | | 11 | 11 | 0 |
| 2017 | 163 | 145 | 17 | 11.7% | | 18 | 17 | 0 |
| 2016 | 1,046 | 1,022 | 131 | 12.8% | | 24 | 10 | 9 |
| 2015 | 2,973 | 2,963 | 126 | 4.3% | | 10 | 6 | 2 |
| 2014 | 886 | 876 | 170 | 19.4% | | 10 | 3 | 4 |
| 2013 | 785 | 736 | 136 | 18.5% | | 49 | 16 | 8 |
| 2012 | 852 | 833 | 196 | 23.5% | | 19 | 11 | 4 |
| 2011 | 872 | 849 | 145 | 17.1% | | 23 | 9 | 2 |
| 2010 | 645 | 639 | 104 | 16.3% | | 6 | 2 | 0 |
| 2008 | 1,215 | 1,211 | 136 | 11.2% | | 4 | 0 | 3 |
| 2007 | 1,035 | 1,023 | 130 | 12.7% | | 12 | 3 | 6 |
| 2006 | 1,194 | 1,162 | 151 | 13.0% | | 32 | 2 | 11 |
| 2005 | 1,396 | 1,383 | 105 | 7.6% | | 13 | 6 | 1 |
| 2004 | 1,315 | 1,306 | 78 | 6.0% | | 9 | 4 | 2 |
| 2003 | 995 | 973 | 111 | 11.4% | | 22 | 2 | 9 |
| 2002 | 1,082 | 1,073 | 81 | 7.5% | | 9 | 2 | 4 |
| 2001 | 1,147 | 1,131 | 151 | 13.4% | | 16 | 0 | 10 |
| 2000 | 1,266 | 1,225 | 152 | 12.4% | | 41 | 6 | 26 |
| | **20,601** | **20,230** | **2,428** | **12.0%** | | **371** | **126** | **109** |
| *% of Decisions*[23] | | 98.20% | 11.8% | — | | 1.8% | 0.6% | 0.5% |

---

[23] Appendix A's source data: MSPB FY2023 Annual Report at 9, 16, *available at* https://www.mspb.gov/about/annual_reports/MSPB_FY_2023_Annual_Report.pdf ; MSPB FY2022 Annual Report at 10, 17, *available at* https://www.mspb.gov/about/annual_reports/MSPB_FY_2022_Annual_Report_20 22671.pdf; MSPB FY2021 Annual Report at 9, *available at* https://www.mspb.gov/about/annual_reports/MSPB_FY_2021_Annual_Report_19 00943.pdf; MSPB FY2020 Annual Report at 11, *available at*

https://www.mspb.gov/about/annual_reports/MSPB_FY_2020_Annual_Report_18 00131.pdf; MSPB FY2019 Annual Report at 13, *available at* https://www.mspb.gov/about/annual_reports/MSPB_FY_2019_Annual_Report_16 97108.pdf; MSPB FY2018 Annual Report at 11, *available at* https://www.mspb.gov/about/annual_reports/MSPB_FY_2018_Annual_Report_15 92474.pdf; MSPB FY2017 Annual Report at 13, 22, *available at* https://www.mspb.gov/about/annual_reports/MSPB_FY_2017_Annual_Report_14 81375.pdf; MSPB FY2016 Annual Report at 15, 26, *available at* https://www.mspb.gov/about/annual_reports/MSPB_FY_2016_Annual_Report_13 74269.pdf; MSPB FY2015 Annual Report at 15, 26, *available at* https://www.mspb.gov/about/annual_reports/MSPB_FY_2015_Annual_Report_12 75851.pdf; MSPB FY2014 Annual Report at 17, 28, *available at* https://www.mspb.gov/about/annual_reports/MSPB_FY_2014_Annual_Report_11 79694.pdf; MSPB FY2013 Annual Report at 29, 38, *available at* https://www.mspb.gov/about/annual_reports/MSPB_FY_2013_Annual_Report_10 38222.pdf; MSPB FY2012 Annual Report at 35, 45, *available at* https://www.mspb.gov/about/annual_reports/MSPB_FY_2012_Annual_Report_79 2967.pdf; MSPB FY2011 Annual Report at 27, 35, *available at* https://www.mspb.gov/about/annual_reports/MSPB_FY_2011_Annual_Report__7 14934.pdf; MSPB FY2010 Annual Report at 25, 32, *available at* https://www.mspb.gov/about/annual_reports/MSPB_FY_2010_Annual_Report_57 6602.pdf; MSPB FY2008 Annual Report at 19, 26, *available at* https://www.mspb.gov/about/annual_reports/MSPB_FY_2008_Annual_Report_53 1109.pdf; MSPB FY2007 Annual Report at 23, 30, *available at* https://www.mspb.gov/about/annual_reports/MSPB_FY_2007_Annual_Report_35 1906.pdf; MSPB FY2006 Annual Report at 19, 26, *available at* https://www.mspb.gov/about/annual_reports/MSPB_FY_2006_Annual_Report_27 7921.pdf; MSPB FY2005 Annual Report at 26, 32–33, *available at* https://www.mspb.gov/about/annual_reports/MSPB_FY_2005_Annual_Report_27 8041.pdf; MSPB FY2004 Annual Report at 25–26, 35, *available at* https://www.mspb.gov/about/annual_reports/MSPB_FY_2004_Annual_Report_27 8028.pdf; MSPB FY2003 Annual Report at 15–16, 23, *available at* https://www.mspb.gov/about/annual_reports/MSPB_FY_2003_Annual_Report_27 7968.pdf; MSPB FY2002 Annual Report at 22–23, 31, *available at* https://www.mspb.gov/about/annual_reports/MSPB_FY_2002_Annual_Report_27 7954.pdf; MSPB FY2001 Annual Report at 34–35, 44, *available at* https://www.mspb.gov/about/annual_reports/MSPB_FY_2001_Annual_Report_27 7945.pdf; FY2000 Annual Report at 24–25, 34, *available at*

## CERTIFICATE OF COMPLIANCE

I certify that this Brief, including Appendix A, complies with the type-volume limits set out in Federal Rule of Appellate Procedure 29 because it contains 3,541 words. This Brief also complies with the requirements of Federal Rules of Appellate Procedure 32(a)(5) and 32(a)(6) because it has been prepared using Microsoft Word in 14-point Times New Roman, a proportionally spaced font.

Dated: April 09, 2025

By: */s/ Elizabeth C. Lockwood*

ELIZABETH C. LOCKWOOD
KATHRYN M. ALI
MEGHAN C. PALMER
ALI & LOCKWOOD LLP
501 H Street NE
Suite 200
(202) 651-2475
liz.lockwood@alilockwood.com
katie.ali@alilockwood.com
meghan.palmer@alilockwood.com

*Counsel for Amici Curiae*
*James M. Eisenmann, Raymond Limon &*
*Jessica Parks*

---

https://www.mspb.gov/about/annual_reports/MSPB_FY_2000_Annual_Report_277484.pdf.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on April 09, 2025, I caused the foregoing to be electronically filed with the Clerk of the United States Court of Appeals for the District of Columbia Circuit by using the appellate CM/ECF system. All counsel in this case are registered CM/ECF users and will be served by the appellate CM/ECF.

Dated: April 09, 2025

By: */s/ Elizabeth C. Lockwood*

ELIZABETH C. LOCKWOOD
KATHRYN M. ALI
MEGHAN C. PALMER
ALI & LOCKWOOD LLP
501 H Street NE
Suite 200
(202) 651-2475
liz.lockwood@alilockwood.com
katie.ali@alilockwood.com
meghan.palmer@alilockwood.com

*Counsel for Amici Curiae*
*James M. Eisenmann, Raymond Limon &*
*Jessica Parks*