# ORAL ARGUMENT SCHEDULED FOR MAY 16, 2025

_____

## Nos. 25-5037, 25-5055

## UNITED STATES COURT OF APPEALS FOR THE DISTRICT OF COLUMBIA CIRCUIT

**Cathy Harris**, in her personal capacity and in her official capacity as Member of the US Merit Systems Protection Board,

**Appellee**,

v.

**Scott Bessent**, in his official capacity as Secretary of Treasury, et al,

**Appellants**
_____

## BRIEF OF AMICUS CURIAE JOSEPH CARSON, PE, FOR APPELLEE, SUPPORTING AFFIRMANCE

JOSEPH CARSON, PE, Pro Se

Knoxville, TN 37934
jpcarson@tds.net
865-675-0236

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ......................................................... ii

IDENTITY OF AMICUS CURIAE ......................................................... 1

ARGUMENT ......................................................................................... 4

    The Civil Service Reform Act Requires For-Cause Removal Protections for MSPB Members to Preserve Merit-Based Federal Employment ............................................................................. 5

    Politicizing Appointments at MSPB and OSC Would Revive Spoils System Corruption and Undermine Public Confidence ...... 7

CONCLUSION ......................................................................... 8

# TABLE OF AUTHORITIES

Page

**CASES**

Carson v. DOE, 77 MSPR 453 (1998); ............................................. 1
Carson v. DOE, 79 MSPR 502 (1998); ............................................. 1
Carson v. DOE, 85 MSPR 171 (2000); ............................................. 1
Carson v. DOE, 88 MSPR 260 (2001). ............................................. 1

*Supreme Court petitions for writs of certiorari*
Carson v. MSPB, docket no. 09-1207; ..................................................... 2
Carson v. OSC; docket no. 11-575; ..................................................... 2
Carson v. MSPB, docket no. 17-1434 ..................................................... 2
Carson v. MSPB, docket no. 21-1109 ..................................................... 2

Page

STATUTES

5 U.S.C. §1204(a)(3) ............................................................................. 4, 6
5 U.S.C. § 1212(a)(1) ............................................................................ 3, 6
5 U.S.C. § 1213(a)(2) ............................................................................ 4
5 U.S.C. § 1213(j) ................................................................................. 4
5 U.S.C. § 1214(a)(1)(A) ...................................................................... 3
5 U.S.C. § 1214(a)(2)(A) ...................................................................... 3
5 U.S.C. § 1214(b)(2)(A) ...................................................................... 3
5 U.S.C. § 1214(b)(2)(B) ...................................................................... 3
5 U.S.C. § 1214(b)(2)(D) ...................................................................... 3
5 U.S.C. § 1214 endnote "Termination Statement" ...................................... 3
5 U.S.C. § 2301(b) ............................................................................... 5
5 U.S.C. §2301(c) ................................................................................ 6
5 U.S.C. §2302(b) ............................................................................... 5
5 U.S.C. § 2302(c)(2)(A) ...................................................................... 6
5 U.S.C. § 2305 .................................................................................... 6

# 1 IDENTIFY OF AMICUS CURIAE, HIS INTEREST IN THIS CASE AND SOURCE OF HIS AUTHORITY TO FILE

Joseph (Joe) Carson, PE, (professional engineer) is a pro se amicus curiae. His interest in the case and the perspectives he offers the Court are singular among the amicii. He is a multiple-time "prevailing" federal agency whistleblower, arguably the "GOAT" - Greatest Of All Time - career federal agency whistleblower. [1]

In his public statements, made regardless of risk to his professional engineer (PE) license in Tennessee, he claims that decades of compounded, continuing, law-breaking on the parts of the lawyer-leaders of US Office of Special Counsel (OSC) and US Merit Systems Protection Board (MSPB) are a proximate cause of much of the national catastrophes and disasters which has befallen America since 1979, have contributed to the significant loss of trust by Americans in their institutions, and bode civilizational doom given the unprecedented collective action challenges facing America and civilization.[2]

---

[1] His 30+ trudge as a federal whistleblower continues, even as he retired, at age 70, with 40 years of federal service, in August 2024.
Published decisions at MSPB in which he "prevailed" as a whistleblower, include:
 Carson v. DOE, 77 MSPR 453 (1998);
Carson v. DOE, 79 MSPR 502(1998);
Carson v. DOE, 85 MSPR 171 (2000);
Carson v. DOE, 88 MSPR 260 (2001)

[2] He has pursued resolution of these whistleblower disclosures for over 20 years, including four visits to the US Supreme Court, see

Bottom line, as GOAT of career federal agency whistleblowers, Engineer Carson, if asked for advise by any concerned federal agency employee, would ask the employee if they could live with themselves "looking the other way."

If they could not, just as Engineer Carson could not, then they need to do what they need to do and accept it could well be futile - nothing will change - and too likely damaging, if not ruinous, to their professional standing and economic security, not to mention marriage, family, health, friendships, etc.

Engineer Carson would go on to say he could not advise "looking the other way, but would not take exception to their doing so," given the likely futility of their whistleblowing and almost predictable high personal and professional risks and costs incurred.

Engineer Carson cannot "live with himself," having to give such dismal, if only too accurate, advice - he thinks it forebodes large-scale, if not near total, civilizational collapse in coming decades, with billions of attendant unnatural deaths. So on he trudges, as GOAT, writing things as this, in the hope of "moving the needle," even if only minutely, from too possible civilizational doom in coming decades and towards a world that works for all.

---

Carson v. MSPB, docket no. 09-1207
Carson v. OSC; docket no. 11-575
Carson v. MSPB, docket no. 17-1434
Carson v. MSPB, docket no. 21-1109

If the Court chooses to deny his motion for leave to file this brief, it will underscore the accuracy of his dismal advice to concerned federal employees.

There is little tangible "in it" for Engineer Carson - he is securely retired, getting Gold medals in senior Olympics, enjoying the companionship of his wife of nearly forty years and his three adult, financially independent, children. He likes what he sees in the mirror too.

This case, though, presents an opportunity for Engineer Carson to advance his personal, post 9/11 mission - obtain an objective resolution of his public testimony of decades of compounded, continuing, civilization-threatening, lawyer-led, law-breaking at OSC and MSPB.

This could happen if the Court affirms the District Court decision and the Supreme Court upholds this Court's decision. If so, then President Trump may determine to remove Cathy Harris for cause from MSPB, citing Engineer Carson's whistleblower disclosure against her (and her predecessors) and her stonewalling his efforts to have it resolved. [3] [4]

---

[3] It is beyond the scope of this amicus brief to elaborate on most of his whistleblower disclosures against OSC, the majority involve how OSC interprets and/or applies its non-discretionary duties to protect federal whistleblowers in the following statutes:5 U.S.C. §§ 1212(a)(1); 1214(a)(1)(A), (a)(2)(A), (b)(2)(A), (b)(2)(B), (b)(2)(D), and the section's endnote "Termination Statement."

More crucially to OSC's (partial) responsibility in 9/11, American torture in the war on terror, and initiating an preventive war in Iraq on the false claim that Saddam Hussein had an active WMD program, is its inability to receive, store and

Engineer Carson has no explicit statutory authority to file this amicus curiae brief. His aspiration, in his remaining spins around the sun is to be a "good ancestor" in his spheres of particular public influence for a world that works for all.

**ARGUMENT I:**

transmit the classified whistleblower disclosures per 5 U.S.C. § 1213(a)(2) and (j).

In the run-up to the Iraq War, DOE analysts, using classified foreign intelligence/counter-intelligence sources and methods, conclusively disputed claims that Iraq had centrifuge uranium enrichment equipment. The White House, via CIA, actively prevented Congress from receiving this information. Because these DOE analysts were unaware of OSC's singular statutory authority to receive such classified disclosures and transmit them to House and Senate Intelligence Committees (and because OSC was unable to comply with its statutory duties to handle such classified information), this crucial information was withheld from Congress before it agreed with the Administration's desire to commence a preventive war on Iraq.

[4] See 5 U.S.C. § 1204(a)(3) for his whistleblower disclosure against Cathy Harris and her predecessors at MSPB. Since its creation in 1979, although it has conducted many "special studies," it has never complied with its duty to "report to the President and the Congress as to whether the public interest in a civil service free of prohibited personnel practices is being adequately protected." It has never conducted a "special study" of OSC, the agency with the singular statutory responsibility to protect federal agency employees from prohibited personnel practices.

Was this "public interest" adequately protected at the successful terrorist attack of 9/11? Going to war in Iraq for false reasons? The economic meltdown of 2008? American torture the war on terror? Loss of space shuttles? The 150,000 sick workers in DOE? The 20,000 sick recovery workers of 9/11? The estimated 500 billion dollar environmental clean-up cost at DOE found in GAO report GAO-19-28? Engineer Carson's first hand testimony as a multiple-time prevailing whistleblower is "NO!"

It is also his first hand testimony that Cathy Harris has, for years now, stonewalled his whistleblower disclosure against her, her colleagues and predecessors, see his related websites https://stopstonewallingmspb.com/ and https://whsknox.blogs.com/mspb_watch/

4

**The Civil Service Reform Act Requires For-Cause Removal Protections for MSPB Members to Preserve Merit-Based Federal Employment**

The Civil Service Reform Act of 1978 (CSRA) was enacted in the wake of the Watergate scandal as part of a broader post-Nixon effort to depoliticize federal employment. The abuse of federal agencies for personal or political gain-punishing enemies and rewarding allies-underscored the need for structural protections to ensure that civil service employment decisions would be based on merit, not patronage.

To achieve this, Congress designed an interlocking system of statutory safeguards. At the heart of this framework is the Merit Systems Protection Board (MSPB), whose role is so central to the civil service tradition that its official seal bears the year "1883"-a reference to the Pendleton Act, which replaced the spoils system with a professional, merit-based civil service. The MSPB was created not as a passive tribunal but as a critical institutional check to uphold merit principles and prevent prohibited personnel practices.

Under 5 U.S.C. § 2301(b), Congress enumerated nine merit system principles, phrased in aspirational terms using the word "should." Because these principles are not self-executing, Congress simultaneously enacted a corresponding set of prohibited personnel practices in 5 U.S.C. § 2302(b), using the directive

"shall not." The relationship between the two is intentional: if prohibited practices are avoided, merit principles are presumed to be upheld.

Congress distributed responsibility for implementing and enforcing these protections among several entities:

Agency heads are tasked with preventing prohibited personnel practices (5 U.S.C. § 2302(c)(2)(A));

The Special Counsel of the Office of Special Counsel (OSC) is directed to protect employees from these practices (5 U.S.C. § 1212(a)(1)); and

The MSPB is empowered to conduct special studies and report to the President and Congress regarding whether the civil service is being adequately protected from prohibited personnel practices (5 U.S.C. § 1204(a)(3)).

Should the MSPB determine that merit principles are not being enforced, the President is obligated under 5 U.S.C. § 2301(c) to take "any action necessary" to remedy such deficiencies. Additional oversight is provided by the Government Accountability Office and the Comptroller General (5 U.S.C. § 2305), reinforcing the system's integrity.

This layered statutory structure would be rendered ineffective if the President were permitted to remove MSPB members without cause. Their independence is essential to preserving the merit system's integrity and preventing

the political exploitation of the civil service. Unfettered removal authority would directly contradict the CSRA's purpose and permit a return to politicized, retaliatory employment practices within federal agencies.

**ARGUMENT II:**

**Politicizing Appointments at MSPB and OSC Would Revive Spoils System Corruption and Undermine Public Confidence**

Congress enacted the CSRA to prevent a return to the type of politicized hiring and firing that plagued the federal government in the 19th century. The term "Grantism," coined during President Ulysses S. Grant's administration, referred to the widespread corruption and patronage that characterized federal employment at the time. It was precisely this systemic abuse-and the tragic assassination of President James Garfield by a disgruntled office seeker-that led to the Pendleton Act of 1883 and the birth of the modern civil service.

If the protections established by the CSRA are dismantled-specifically, if the President is permitted to remove MSPB or OSC leadership at will-the door opens to a new era of politically motivated employment practices. Federal employment decisions could again be based on loyalty, connections, or ideological alignment, rather than qualifications and merit.

The risk is not theoretical. If positions such as the Special Counsel of the

OSC or MSPB Board Members become political appointments lacking tenure protections, the effects will reverberate across all federal agencies. Employees will be discouraged from reporting misconduct or resisting unlawful orders, knowing that their protectors lack the independence or authority to defend them. This would erode not only the merit system but also public trust in the impartiality and integrity of federal institutions.

In a broader geopolitical context, the degradation of a merit-based civil service aligns the United States with regimes where public service is defined by cronyism and fear, not professionalism and fairness. The safeguards built over more than a century-from the Pendleton Act to the CSRA-exist to prevent precisely this regression.

**CONCLUSION**

This Court should affirm the district court decision.

Respectfully Submitted,

_____/s/_____
Joseph P Carson, PE (PE license no. in Tennessee is 106350)

Knoxville, TN 37934
865-675-0236

8

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limitation of Federal Rules of Appellate Procedure 29(a)(5) and 32(a)(7)(B)(I) because, excluding the parts of the brief exempted by the Federal Rule of Appellate Procedure 32(f) and the Rules of this Court, it contains 1819 words.

This brief also complies with the typeface and type style requirements of the Federal Rules of Appellate Procedure 29(a)(4), 32(a)(5), and 32(a)(6) because it has been prepared in a proportionally spaced typeface using WordPerfect in 14-point Times New Roman.