

**U.S. Department of Justice**

Civil Division, Appellate Staff
950 Pennsylvania Ave. NW
Washington, DC 20530

Tel: (202) 514-4819

May 23, 2025

VIA CM/ECF

Clifton Cislak, Clerk of Court
U.S. Court of Appeals for the District of Columbia Circuit
333 Constitution Ave. NW
Washington, D.C. 20001

    RE:   *Harris v. Bessent, et al.*, No. 25-5055; *Wilcox v. Trump, et al.*, No. 25-5057

Dear Mr. Cislak:

    Pursuant to Federal Rule of Appellate Procedure 28(j), we write to advise this Court of the Supreme Court's recent order in *Trump v. Wilcox*, No. 24A966, 605 U. S. ____ (May 21, 2025) (per curiam) (attached), which granted the government's request to stay the orders under review here. The Supreme Court reaffirmed that the President "may remove without cause executive officers who exercise [executive] power on his behalf, subject to narrow exceptions recognized by our precedents" and noted that "the Government is likely to show that both the NLRB and MSPB exercise considerable executive power." Slip Op. 1. The order further reflects the Supreme Court's "judgment that the Government faces greater risk of harm from an order allowing a removed officer to continue exercising the executive power than a wrongfully removed officer faces from being unable to perform her statutory duty." *Id.* The Supreme Court's order reinforces the conclusion that the district courts erred in ordering the reinstatement of Members of the NLRB and MSPB.

Sincerely,

s/ *Laura E. Myron*
Laura E. Myron
U.S. Department of Justice
Appellate Staff, Civil Division

cc (via CM/ECF):   Counsel of Record

Cite as: 605 U. S. ____ (2025) 1

# SUPREME COURT OF THE UNITED STATES

No. 24A966

DONALD J. TRUMP, PRESIDENT OF THE UNITED STATES, ET AL. *v.* GWYNNE A. WILCOX, ET AL.

ON APPLICATION FOR STAY

[May 22, 2025]

 The Government has applied for a stay of orders from the District Court for the District of Columbia enjoining the President's removal of a member of the National Labor Relations Board (NLRB) and a member of the Merit Systems Protection Board (MSPB), respectively. The President is prohibited by statute from removing these officers except for cause, and no qualifying cause was given. See 29 U. S. C. §153(a); 5 U. S. C. §1202(d).

 The application for stay presented to THE CHIEF JUSTICE and by him referred to the Court is granted. Because the Constitution vests the executive power in the President, see Art. II, §1, cl. 1, he may remove without cause executive officers who exercise that power on his behalf, subject to narrow exceptions recognized by our precedents, see *Seila Law LLC* v. *Consumer Financial Protection Bureau*, 591 U. S. 197, 215−218 (2020). The stay reflects our judgment that the Government is likely to show that both the NLRB and MSPB exercise considerable executive power. But we do not ultimately decide in this posture whether the NLRB or MSPB falls within such a recognized exception; that question is better left for resolution after full briefing and argument. The stay also reflects our judgment that the Government faces greater risk of harm from an order allowing a removed officer to continue exercising the executive power than a wrongfully removed officer faces from being unable to perform her statutory duty. See *Trump* v. *International*

*Refugee Assistance Project*, 582 U. S. 571, 580 (2017) (*per curiam*) ("The purpose of . . . interim equitable relief is not to conclusively determine the rights of the parties, but to balance the equities as the litigation moves forward." (citation omitted)).  A stay is appropriate to avoid the disruptive effect of the repeated removal and reinstatement of officers during the pendency of this litigation.

Finally, respondents Gwynne Wilcox and Cathy Harris contend that arguments in this case necessarily implicate the constitutionality of for-cause removal protections for members of the Federal Reserve's Board of Governors or other members of the Federal Open Market Committee. See Response of Wilcox in Opposition to App. for Stay 2−3, 27−28; Response of Harris in Opposition to App. for Stay 3, 5−6, 16−17, 36, 40.  We disagree.  The Federal Reserve is a uniquely structured, quasi-private entity that follows in the distinct historical tradition of the First and Second Banks of the United States.  See *Seila Law*, 591 U. S., at 222, n. 8.

The March 4, 2025, order of the United States District Court for the District of Columbia, No. 25−cv−412, ECF Doc. 39, and the March 6, 2025, order of the United States District Court for the District of Columbia, No. 25−cv−334, ECF Doc. 34, are stayed pending the disposition of the appeal in the United States Court of Appeals for the District of Columbia Circuit and disposition of a petition for a writ of certiorari, if such a writ is timely sought.  Should certiorari be denied, this stay shall terminate automatically.  In the event certiorari is granted, the stay shall terminate upon the sending down of the judgment of this Court.

Cite as: 605 U. S. ____ (2025) 1

KAGAN, J., dissenting

# SUPREME COURT OF THE UNITED STATES

No. 24A966

DONALD J. TRUMP, PRESIDENT OF THE UNITED STATES, ET AL. *v.* GWYNNE A. WILCOX, ET AL.

ON APPLICATION FOR STAY

[May 22, 2025]

JUSTICE KAGAN, with whom JUSTICE SOTOMAYOR and JUSTICE JACKSON join, dissenting from the grant of the application for stay.

For 90 years, *Humphrey's Executor* v. *United States*, 295 U. S. 602 (1935), has stood as a precedent of this Court. And not just any precedent. *Humphrey's* undergirds a significant feature of American governance: bipartisan administrative bodies carrying out expertise-based functions with a measure of independence from presidential control. The two such agencies involved in this application are the National Labor Relations Board (NLRB) and Merit Systems Protection Board (MSPB). But there are many others—among them, the Federal Communications Commission (FCC), Federal Trade Commission (FTC), and Federal Reserve Board. Congress created them all, though at different times, out of one basic vision. It thought that in certain spheres of government, a group of knowledgeable people from both parties—none of whom a President could remove without cause—would make decisions likely to advance the long-term public good. And that congressional judgment, *Humphrey's* makes clear, creates no conflict with the Constitution. Rejecting a claim that the removal restriction enacted for the FTC interferes with "the executive power," the *Humphrey's* Court held that Congress has authority, in creating such "quasi-legislative or quasi-judicial" bodies, to "forbid their [members'] removal except for cause." *Id.*, at

626, 629. Indeed, that conclusion "cannot well be doubted." *Id.,* at 629; see also *Wiener* v. *United States*, 357 U. S. 349 (1958) (reaffirming *Humphrey's*).

The current President believes that *Humphrey's* should be either overruled or confined. See Application 14; Letter from S. Harris, Acting Solicitor General, to Rep. J. Raskin, Re: Restrictions on the Removal of Certain Principal Officers of the United States (Feb. 12, 2025). And he has chosen to act on that belief—really, to take the law into his own hands. Not since the 1950s (or even before) has a President, without a legitimate reason, tried to remove an officer from a classic independent agency—a multi-member, bipartisan commission exercising regulatory power whose governing statute contains a for-cause provision. Yet now the President has discharged, concededly without cause, several such officers, including a member of the NLRB (Gwynne Wilcox) and a member of the MSPB (Cathy Harris). Today, this Court effectively blesses those deeds. I would not. Our *Humphrey's* decision remains good law, and it forecloses both the President's firings and the Court's decision to award emergency relief.

Our emergency docket, while fit for some things, should not be used to overrule or revise existing law. We consider emergency applications "on a short fuse without benefit of full briefing and oral argument"; and we resolve them without fully (or at all) stating our reasons. *Does 1–3* v. *Mills*, 595 U. S. ___, ___ (2021) (BARRETT, J., concurring in denial of application for injunctive relief ) (slip op., at 1). It is one thing to grant relief in that way when doing so vindicates established legal rights, which somehow the courts below have disregarded. It is a wholly different thing to skip the usual appellate process when issuing an order that itself changes the law. See, *e.g., Netchoice, LLC* v. *Paxton*, 596 U. S. ___, ___ (2022) (ALITO, J., dissenting from grant of application to vacate stay) (slip op., at 2) (demanding that an applicant for relief have a good claim "under existing law");

Cite as: 605 U. S. ____ (2025)            3

KAGAN, J., dissenting

*Merrill* v. *Milligan*, 595 U. S. ___, ___ (2022) (ROBERTS, C. J., dissenting from grant of applications for stays) (slip op., at 1) (same); *id.,* 595 U. S., at ___ (KAGAN, J., dissenting from grant of applications for stays) (slip op., at 1) (same). And nowhere is short-circuiting our deliberative process less appropriate than when the ruling requested would disrespect—by either overturning or narrowing—one of this Court's longstanding precedents, like our nearly century-old *Humphrey's* decision.

Under that decision, this case is easy, as the courts below found: The President has no legal right to relief. Congress, by statute, has protected members of the NLRB and MSPB (like Wilcox and Harris) from Presidential removal except for good cause. See 29 U. S. C. §153(a) (permitting removal only for "neglect of duty or malfeasance in office"); 5 U. S. C. §1202(d) (permitting removal only for "inefficiency, neglect of duty, or malfeasance in office"). And, again, *Humphrey's* instructs that Congress can do so without offending the Constitution. Just like the agency at issue there (the FTC), the NLRB and MSPB are multi-member bodies of experts, balanced along partisan lines, with "quasi-legislative or quasi-judicial" (not "purely executive") functions. *Humphrey's*, 295 U. S., at 628, 631; see *Seila Law LLC* v. *Consumer Financial Protection Bureau*, 591 U. S. 197, 204, 216–217 (2020). So both fit securely within the ambit of *Humphrey's*—as no one in the history of either agency has ever doubted. That means to fire their members, the President—under existing law—needs good cause, which he admits he does not have. The only way out of that box is to upend *Humphrey's*.

For that reason, the majority's order granting the President's request for a stay is nothing short of extraordinary. That order consents to the President's (statutorily barred) removal of the NLRB and MSPB Commissioners, at least until we decide their suits on the merits. And so the order allows the President to overrule *Humphrey's* by fiat, again

4  TRUMP *v.* WILCOX

KAGAN, J., dissenting

pending our eventual review. This Court often reminds other judges that if one of our precedents "has direct application in a case," they must follow it, even if they dislike it—"leaving to this Court the prerogative of overruling its own decisions." *Rodriguez de Quijas* v. *Shearson/American Express, Inc.*, 490 U. S. 477, 484 (1989). In keeping with that directive, lower courts recently faced with challenges to independent agencies' removal provisions have uniformly rejected them based on *Humphrey's*. See, *e.g., Consumers' Research* v. *Consumer Product Safety Comm'n*, 91 F. 4th 342, 346 (CA5 2024) (Willett, J.) ("As middle-management circuit judges, we must follow binding precedent," which *Humphrey's* remains); *Leachco, Inc.* v. *Consumer Product Safety Comm'n*, 103 F. 4th 748, 760–763 (CA10 2024) (similar); *Meta Platforms, Inc.* v. *FTC*, 2024 WL 1549732, \*2 (CADC, Mar. 29, 2024) (*per curiam*) (similar). It should go without saying that the President must likewise follow existing precedent, however strong he thinks the arguments against it—unless and until he convinces us to reject what we previously held. Yet here the President fired the NLRB and MSPB Commissioners in the teeth of *Humphrey's*, betting that this Court would acquiesce. And the majority today obliges—without so much as mentioning *Humphrey's*.

The majority's explanation of its action unfolds in two parts, neither rising to the occasion.

The first gestures toward the merits, but in a most unusual and unedifying way. Our normal (invariable?) practice is to grant a stay pending appeal only when we decide the applicant is likely to succeed on the merits. See, *e.g., Hollingsworth* v. *Perry*, 558 U. S. 183, 190 (2010) (*per curiam*). But the majority's order purports not to reach that conclusion. According to the majority, the President may remove without cause officers exercising executive power, "subject to narrow exceptions recognized by our precedents." *Ante,* at 1. The majority will not say the name of the relevant

precedent, but one of those "exceptions" of course comes from *Humphrey's*. See *Seila Law*, 591 U. S., at 204, 215–217. The question thus becomes: Does *Humphrey's* protect the NLRB and MSPB Commissioners? Well, the majority says, those officers likely exercise "considerable executive power"; but whether they fall within "a recognized exception"—*i.e., Humphrey's*—is better left for the future. *Ante,* at 1. So the majority's order just restates the question this case raises—despite the need to give a preliminary answer before ordering relief. Unless . . . unless the majority thinks it has provided a hint. Maybe by saying that the Commissioners exercise "considerable" executive power, the majority is suggesting that they cannot fall within the *Humphrey's* "exception." But if that is what the majority means, then it has foretold a massive change in the law—reducing *Humphrey's* to nothing and depriving members of the NLRB, MSPB, and many other independent agencies of tenure protections. And it has done so on the emergency docket, with little time, scant briefing, and no argument.

  The second part of the majority's explanation, focusing on what we typically call the balance of equities, in no way compensates for the first's failures. Here, the majority reasons that a stay is justified because the interests at stake are lopsided. "[T]he Government," it declares, "faces greater risk of harm from an order allowing a removed officer to continue exercising the executive power than a wrongfully removed officer faces from being unable to perform her statutory duty." *Ante,* at 1. But that statement misapprehends, on both sides, what this case involves.

  On the latter side, the relevant interest is not the "wrongfully removed officer[s']," but rather Congress's and, more broadly, the public's. What matters, in other words, is not that Wilcox and Harris would love to keep serving in their nifty jobs. What matters instead is that Congress provided for them to serve their full terms, protected from a President's desire to substitute his political allies. See *Wiener*,

6	TRUMP *v.* WILCOX

KAGAN, J., dissenting

357 U. S., at 354. Or differently put, the interest at stake is in maintaining Congress's idea of independent agencies: bodies of specialists balanced along partisan lines, which will make sound judgments precisely because not fully controlled by the White House. Even without *Humphrey's*, this Court would have to give respect, in balancing equities, to Congress's expression of that idea in legislation. See *Turner Broadcasting System, Inc.* v. *FCC*, 507 U. S. 1301, 1302 (1993) (Rehnquist, C. J., in chambers) (Acts of Congress "should remain in effect pending a final decision on the merits by this Court"); *Walters* v. *National Assn. of Radiation Survivors*, 468 U. S. 1323, 1324 (1984) (Rehnquist, J., in chambers) ("The presumption of constitutionality which attaches to every Act of Congress" is "an equity to be considered" in the stay analysis). And of course the Court is not without *Humphrey's*, which already approved the kind of removal restrictions at issue here. Given that decision—and the near-century of administrative practice that has followed—the majority has no excuse for so misidentifying the interest that cuts against unconstrained removal. It is, again, the interest in the NLRB, MSPB, and all their ilk working as Congress intended them to, on the view that a measure of independence would serve the public good.

And on the former side of the balance, the majority distorts and overstates the interest in preventing Wilcox and Harris from continuing in office. That interest, to begin with, is not "the Government['s]," *ante,* at 1, but only the President's. Congress, after all, is also part of the Government, and (as just noted) its equities lie in preserving the legislation it has enacted to limit removals. And as to the President's interest in firing Wilcox and Harris, the majority gives it more weight than it has borne in almost a century. Between *Humphrey's* and now, 14 different Presidents have lived with Congress's restrictions on firing members of independent agencies. No doubt many would have preferred it otherwise. But can it really be said, after

Cite as: 605 U. S. ____ (2025)           7

KAGAN, J., dissenting

all this time, that the President has a crying need to discharge independent agency members right away—before this Court (surely next Term) decides the fate of *Humphrey's* on the merits? The impatience to get on with things—to *now* hand the President the most unitary, meaning also the most subservient, administration since Herbert Hoover (and maybe ever)—must reveal how that eventual decision will go. In valuing so highly—in an emergency posture—the President's ability to fire without cause Wilcox and Harris and everyone like them, the majority all but declares *Humphrey's* itself the emergency.\*

Except apparently for the Federal Reserve. The majority closes today's order by stating, out of the blue, that it has no bearing on "the constitutionality of for-cause removal protections" for members of the Federal Reserve Board or Open Market Committee. *Ante,* at 2. I am glad to hear it, and do not doubt the majority's intention to avoid imperiling the Fed. But then, today's order poses a puzzle. For the Federal Reserve's independence rests on the same constitutional and analytic foundations as that of the NLRB, MSPB, FTC, FCC, and so on—which is to say it rests largely on *Humphrey's*. So the majority has to offer a different story: The Federal Reserve, it submits, is a "uniquely structured" entity with a "distinct historical tradition"—and it cites for that proposition footnote 8 of this Court's opinion in *Seila Law. Ante,* at 2 (citing 591 U. S., at 222, n. 8). But—sorry—footnote 8 provides no support. Its only relevant sentence rejects an argument made in the dissenting

―――――――

\*The majority also justifies its stay on the ground that it will "avoid the disruptive effect of the repeated removal and reinstatement of officers during the pendency of this litigation." *Ante,* at 2. But that reason, too, gives the ultimate game away. As this case came to us, Wilcox and Harris had been reinstated to their positions, by the combined rulings of the district and appellate courts. So by re-removing them, the majority's order itself causes disruption—except, of course, if that order presumes or implies that they will be re-removed next Term anyway.

opinion "even assuming [that] financial institutions like the Second Bank and Federal Reserve can claim a special historical status." And so an assumption made to humor a dissent gets turned into some kind of holding. Because one way of making new law on the emergency docket (the deprecation of *Humphrey's*) turns out to require yet another (the creation of a bespoke Federal Reserve exception). If the idea is to reassure the markets, a simpler—and more judicial—approach would have been to deny the President's application for a stay on the continued authority of *Humphrey's*.

　"To avoid an arbitrary discretion in the courts," Hamilton wrote, "it is indispensable that they should be bound down by strict rules and precedents." Federalist No. 78, p. 529 (J. Cooke ed. 1961). Today's order, however, favors the President over our precedent; and it does so unrestrained by the rules of briefing and argument—and the passage of time—needed to discipline our decision-making. I would deny the President's application. I would do so based on the will of Congress, this Court's seminal decision approving independent agencies' for-cause protections, and the ensuing 90 years of this Nation's history. Respectfully, I dissent.